**EYAK NATIVE VILLAGE, et al., Plaintiffs–Appellants,**

v.

**EXXON CORPORATION, et al., Defendants–Appellees.**

No. 93–35274.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 13, 1993.

Decided May 27, 1994.

774

James van R. Springer, Dickstein, Shapiro & Morin, Washington, DC, Lloyd Benton Miller, Sonosky, Chambers, Sachse & Miller, Anchorage, AK, and Jerome M. Congress, Milberg, Weiss, Bershad, Specthrie & Lerach, New York City, for plaintiffs-appellants.

John F. Daum, O'Melveny & Myers, Los Angeles, CA, Ronald L. Olson, Munger, Tolles & Olson, Los Angeles, CA, Charles P. Flynn, Burr, Pease & Kurtz, Anchorage, AK, and Douglas J. Serdahely, Bogle & Gates, Anchorage, AK, for defendants-appellees.

Before: CHOY, HUG, and LEAVY, Circuit Judges.

Opinion by Judge HUG.

HUG, Circuit Judge:

This case requires us to determine whether the district court's denial of motions to remand cases removed from an Alaska state court was error. This interlocutory appeal concerns the removal of over 160 separate cases brought in the Superior Court of the State of Alaska. Plaintiffs sued Exxon and Alyeska under Alaska law for the injuries caused by the *Exxon Valdez* oil spill.[1] The cases proceeded in state court for several years before defendants Exxon and Alyeska removed the cases to district court on the basis that federal questions had arisen justifying removal. The issue on appeal is whether removal to federal court was appropriate.

The appeal is from five district court orders (Nos. 80, 83, 91, 92, 108) denying motions to remand to the Superior Court of the State of Alaska a number of different removed cases. We granted permission to appeal pursuant to 28 U.S.C. § 1292(b), and we now affirm in part and reverse in part.

I.

*GENERAL BACKGROUND OF LITIGATION*

Hundreds of cases were filed in both the Alaska Superior Court and the federal district court seeking relief from Exxon and Alyeska for various injuries caused by the March 1989 *Exxon Valdez* oil spill. Exxon was sued as the owner and operator of the tanker that went off course and ran aground (Exxon Shipping Co.) and as the owner of the more than 11 million gallons of oil that spilled (Exxon Corp.) for failure to perform

---

1. "Exxon" refers to Exxon Corporation, Exxon Shipping Company, Exxon Transportation Company, and individual defendants who are current or former Exxon employees. "Alyeska" refers to Alyeska Pipeline Service Company, the six oil companies which, in addition to Exxon, are its co-owners, and individual defendants employed by Alyeska.

its statutory and common law responsibilities in connection with the spillage and the clean up. The Alyeska defendants are pipeline companies that own and operate the Trans–Alaska Pipeline System and the terminal at which the *Exxon Valdez* had been loaded.

The plaintiffs sue on their own behalf and in some cases as representatives of plaintiff classes, including commercial fishermen whose fishing grounds were damaged by the oil, Alaska Natives who subsist on various fish and other resources, processors of fish harvested from the affected area, employees of processors, area businesses and land owners, and other injured persons. The federal court complaints seek relief under maritime law and the remedial provisions of the Trans–Alaska Pipeline Authorization Act, 43 U.S.C. § 1653(c) ("TAPAA"). The complaints filed in state court seek relief under the Alaska Environmental Conservation Act, 46 Alaska Stat. §§ 46.03.822, *et seq.*, which establishes strict liability for oil spills, and also under Alaska's tort law.

The federal court cases were consolidated for pretrial purposes before District Judge H. Russel Holland and the state court cases were consolidated before Judge Brian Shortell of the Third Judicial District of the Alaska Superior Court. The state and federal courts cooperated in some stages of the proceedings. They selected the same lead and liaison counsel and a common executive committee for the plaintiffs, appointed a single discovery master, and jointly heard motions.

The State of Alaska and the United States Government also brought actions against the defendants on behalf of the public for injury to natural resources pursuant to the provisions of the Clean Water Act, 33 U.S.C. § 1321(f), and other federal environmental legislation. On October 8, 1991, the state and federal governments' claims against Exxon Corp. and Exxon Shipping Co. were resolved by entry of an Agreement and Consent Decree in the district court. The Agreement and Consent Decree provided for Exxon Corporation and Exxon Shipping to pay the governments at least nine hundred million dollars ($900,000,000) to restore and rehabilitate the damaged natural resources in exchange for a release of all claims, including natural resources claims on behalf of the public. There is also a provision for an additional one hundred million dollars ($100,000,000) for unexpected damages under certain conditions.

Four environmental organizations sought to recover damages from Exxon to contribute to a conservation trust fund for the benefit of the general public to restore the environment and natural resources damaged by the oil spill. We have designated these plaintiffs as the "trust plaintiffs." On November 21, 1991, the Exxon defendants removed to federal court all cases related to the environmental organizations' cases. The Exxon removals are based on the ground that the claims of the trust plaintiffs raised a federal question because the trust plaintiffs continued to pursue their claims for natural resources damages after the federal consent decree was entered to cover the same natural resources damages. Exxon also removed other non-removable claims that had been joined with the claims of the trust plaintiffs. The district court's Order No. 80 denied the plaintiffs' motions to remand their cases to state court. Those plaintiffs timely appeal.

On February 13, 1992, Alyeska removed approximately 150 cases to federal court. Those plaintiffs had contended that Alyeska had violated state safety standards. Alyeska argued that this raised a federal question because it attacked a 1979 federal district court decree enjoining the state from enforcing certain provisions of the Alaska Tanker Law. The plaintiffs' motions to remand were denied in the district court's Orders Nos. 83, 91, 92, and 108. The plaintiffs timely appeal.

## II.

### ORDER NO. 80: THE EXXON REMOVALS

#### A. Background

The trust plaintiffs are composed of four environmental organizations—National Wildlife Federation ("NWF"), Wildlife Federation of Alaska ("WFA"), Natural Resources Defense Council ("NRDC"), involved in one action, and Alaska Sportfishing Association ("ASA")—and also four individuals, originally involved in a separate action.

NWF, WFA, and NRDC filed a complaint on August 17, 1989, in *National Wildlife Federation v. Exxon,* Superior Court No. 3AN–89–6957, stating 10 causes of action based on strict liability, negligence, and nuisance. The other plaintiffs stated similar liability claims in the Amended and Consolidated Class Action Complaint filed in *Alaska Sportfishing Association v. Alyeska Pipeline Service Co.,* Superior Court No. 3AN–89–5188, on July 17, 1989.

On September 3, 1991, the trust plaintiffs moved to certify a conservation trust fund class to include "[a]ll persons whose use, enjoyment, aesthetic and environmental interests in the protection and enhancement of the ecosystem, wildlife and other natural resources of Prince William Sound and the Oil Impact Area" were injured by the oil spill. The class excluded the commercial and subsistence use and enjoyment interests of the classes already certified.

The relief sought by the trust plaintiffs in the certification of the trust fund class was creation of a conservation trust to restore the ecology of the oil impact area, to protect the area from further environmental harm, to restore wildlife populations on land and in the sea, to fund scientific studies and monitoring of the area, and to acquire resources equivalent to those lost in the spill. The trust plaintiffs claimed that the trust class was necessary because the State of Alaska could not adequately represent them due to its conflict of interest, and noted that Alaska law provides for individual actions where there is a potential conflict of interest between the Government and a class of private persons.

A little over a month after the trust plaintiffs filed for class certification, the Agreement and Consent Decree between the United States, Alaska, and the Exxon and Alyeska defendants was filed in federal court on October 8, 1991. The consent decree stated that the natural resources damages included relief recoverable by the governments "in their capacity as trustees of Natural Resources on behalf of the public" for injury to *all* natural resources resulting from the oil spill, "under *any* federal or state statute or maritime or common law relating to the environment."

The trust plaintiffs, however, proceeded with their action, and filed their reply brief in support of certification of a conservation trust class in state court on October 22, 1991. Anticipating the defense of *res judicata,* the trust plaintiffs argued that the consent judgment was not binding because the State was not fully representative of all interests. They asserted that they were entitled to sue as trustees for public users of the natural resources as a supplement to the damages secured by the State and the United States in the consent decree for two reasons.

First, the trust plaintiffs asserted that the State had a conflict of interest in negotiating the decree because of its own potential liability exposure. Second, they claimed that the settlement did not provide sufficient funds for environmental injuries, a fact that they claimed was indicated by the State's negotiating in secret and its failing to reveal the reports of economic studies on which it had purportedly relied. The trust plaintiffs' reply brief also stated, however, that they were not challenging the government settlement, but were seeking only supplementary and non-conflicting recovery through the proposed trust fund.

In notices of removal filed November 21, 1991, Exxon removed the trust plaintiffs' cases, *National Wildlife Federation v. Exxon* and *Eyak Native Village v. Exxon,* to federal court. Exxon contended that the trust plaintiffs' October 22, 1991, reply brief, which continued support of certification of a conservation trust fund class to pursue claims for environmental damages on behalf of the general public, was in derogation of the federal judgment and raised a federal question justifying removal of the *National Wildlife* case. Exxon removed the class plaintiffs in the *Eyak* case pursuant to 28 U.S.C. § 1441(c) on the ground that this consolidated class action involved independent claims joined with the *National Wildlife* case.

Exxon also removed *Wisner v. Exxon,* Superior Court No. 3KO–89–265, on the ground that it, too, was joined with the trust plaintiffs' actions.

## B. *Trust Plaintiffs' Motion to Remand*

In Order No. 80, the district court denied remand of the trust plaintiffs' cases removed by Exxon. The trust plaintiffs had asserted that they were entitled to seek damages on behalf of the public for injury to natural resources in addition to those that the governments had obtained by the consent judgment. The district court held that removal was appropriate under the authorities that permit removal when a state court litigant makes a collateral attack on a federal judgment. Judge Holland construed the trust plaintiffs' reply brief as seeking relief from the decree on the basis that it was fraudulently obtained.

The district court concluded that the October 22, 1991, reply brief raised a federal claim in the form of an independent action in equity, or a Federal Rule of Civil Procedure 60(b)(3) motion for relief from the consent decree. Relying on *Villarreal v. Brown Express, Inc.*, 529 F.2d 1219, 1221 (5th Cir. 1976), the court concluded that the reply brief raised a federal claim sufficient for removal under 28 U.S.C. § 1441(a).

■ We review *de novo* the district court's denial of a motion to remand an action removed from state to federal court. *Sullivan v. First Affiliated Securities, Inc.*, 813 F.2d 1368, 1371 (9th Cir.), *cert. denied*, 484 U.S. 850, 108 S.Ct. 150, 98 L.Ed.2d 106 (1987).

Any action based on a claim or right that arises under federal law may be removed to federal court pursuant to 28 U.S.C. § 1441, if a notice of removal is filed within 30 days after the defendant receives "a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b) (1988).

Exxon stated as ground for removal that the reply brief, which continued the trust plaintiffs' litigation despite the consent decree, raised a federal question of the construction of the consent decree and whether the consent decree was res judicata as to the trust plaintiffs' claims. In denying the motion to remand, the district court did not rely on this ground but, instead, construed the reply brief as transforming the trust plaintiffs' action into an attack on the consent decree in the nature of a motion or independent action provided for under Rule 60(b).

■ The reply brief could not be construed as transforming the complaint into a Rule 60(b) motion because it was not made in the federal action. However, Rule 60(b) has a saving clause that preserves a court's power to entertain an independent action in equity to obtain relief from judgment: a motion may be treated as an independent action in equity, or vice versa. 11 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2868, at 244 (1973). Appellants contend that this was inappropriate because they would have lacked standing to seek Rule 60(b)-type relief because they were not parties to the consent decree. However, a nonparty may seek relief from a judgment procured by fraud if the nonparty's interests are directly affected. *See Kem Manufacturing Corp. v. Wilder*, 817 F.2d 1517, 1521 (11th Cir.1987); *see also Southerland v. Irons*, 628 F.2d 978, 980 (6th Cir.1980). Moreover, a court has "inherent power ... to investigate whether a judgment was obtained by fraud," and may bring before it "all those who may be affected...." *See Universal Oil Products Co. v. Root Refining Co.*, 328 U.S. 575, 580, 66 S.Ct. 1176, 90 L.Ed. 1447 (1946).

■ Further, Rule 60(b) or an independent action allows relief from judgment to be given to "a party or his legal representative." This allows one who is in privity with a party to move for relief. 11 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2865, at 225–26 & n. 58 (1973). The citizens whom the trust plaintiffs sought to represent were more than in privity with the State; they were identical. Where the State is a party to relevant proceedings, then citizens are represented in those proceedings and are bound by the judgment. *Washington v. Washington State Commercial Passenger Fishing Vessel Ass'n*, 443 U.S. 658, 692–93 n. 32, 99 S.Ct. 3055, 3077–78 n. 32, 61 L.Ed.2d 823 *modified on other grounds*, 444 U.S. 816, 100 S.Ct. 34, 62 L.Ed.2d 24 (1979); *Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 340–41, 78 S.Ct. 1209, 1220–21, 2 L.Ed.2d 1345 (1958); *United States v. Baker*, 641 F.2d 1311, 1314 n. 5 (9th Cir.1981).

Other jurisdictions have held that an action to obtain relief from a federal judgment presents a general federal question, which may support removal to federal court. *See Villarreal,* 529 F.2d at 1221; *Deauville Assocs., Inc. v. Lojoy Corp.,* 181 F.2d 5 (5th Cir.), cert. denied, 340 U.S. 905, 71 S.Ct. 281, 95 L.Ed. 655 (1950); *see also* 7 James W. Moore, et al., Moore's Federal Practice ¶¶ 60.37[2](3) (federal court should be independent of state law in determining what grounds will support an independent action for relief from a federal judgment); 60.38[1] (such an action involves the validity of the judgment, and the substantive principles of the action are federal) (2d ed. 1993).

The district court's treatment of the trust plaintiffs' claims as an independent action for relief from judgment recharacterized their claims as federal claims, because the alleged conflict of interest of the State and the insufficiency of the recovery implied that the decree was fraudulently obtained. The State of Alaska acted in its capacity as trustee of natural resources on behalf of the public. The general public that the trust plaintiffs sought to represent is the same general public the State represented. The consent decree covered essentially the same claims as were raised by the trust plaintiffs: damage to natural resources. The consent decree specified that it contained full compensation for the public's claim for natural resources damages.

The district court noted that the reply brief asserted that the State had a conflict of interest in representing the public's interest in natural resources and quoted the following portions of the reply brief:

As a predominant common issue in this controversy, Trust Class Plaintiffs contend that because of divergent and potentially conflicting interests with the environmental interests of private persons, the settlement by the State was insufficient.

. . . .

In contrast to the relief Trust Class Plaintiffs seek here relating only to the environment and its use, the State when negotiating its settlement, not only had a legitimate variety of divergent public interests such as cost and economic concerns,

past and future dealings with the oil industry and these settling defendants, and employment, budgetary and political objectives, but it also, most critically, had its own potential liability exposure in these cases, and thereby obtained important individual monetary and nonmonetary benefits for itself, not its citizens, as part of the Exxon settlement and Plea Agreement.

The district court also noted that the reply brief asserted that the State had breached its fiduciary duties and quoted the following portion of the reply brief:

In addition, Trust Class Plaintiffs contend that the settlement reached between the State and Exxon provided insufficient dollars for presently known environmental injuries because the State negotiated in secret with Exxon, and has not revealed the actual reports of economic studies, on which it purportedly relied in negotiating the settlement.

The district court stated:

The court views these statements as implying that the consent decree was fraudulently obtained because the State acted in a capacity other than the trustee capacity it represented to the court it was acting under, and because the withholding of the studies kept the court and the public from ascertaining the extent of the insufficiency of the settlement.

The district court noted that sections 3 and 6 of the consent decree provide as follows:

3. "State" means the State of Alaska, *in all its capacities,* including all departments, divisions, independent boards, administrations, *natural resource trustees,* and agencies of the state government.

. . . .

6(d). "Natural Resource Damages" means compensatory and remedial relief recoverable by the Governments *in their capacity as trustees of Natural Resources on behalf of the public* for injury to, destruction of, or loss of any and all Natural Resources resulting from the Oil Spill, whether under the Clean Water Act, . . ., the Trans–Alaska Pipeline Authorization Act, . . ., or any federal or state statute or

maritime or common law relating to the environment. . . .

(Emphasis added by district court.) Thus, the district court correctly concluded that the trust plaintiffs were seeking to set aside the provision of the consent decree that provided it was in full payment for the damages to the public's natural resources. The ground for this relief was that the State had purported to represent the public's interest in restoring the natural resources while it had an adverse governmental interest. Thus, the contention is that the State operated in derogation of its fiduciary duties imposing a fraud on the court.

Although the original complaint did not set forth a removable claim, the reply brief did. Section 1446(b) provides in relevant part:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order *or other paper* from which it may first be ascertained that the case is one which is or has become removable. . . .

28 U.S.C. § 1446(b) (emphasis added). The reply brief constitutes the "other paper" justifying the removal.

Appellants contend that removal was untimely because the reply brief did not change the basic theory and nature of the claims, or the relief sought in the form of a conservation trust. They maintain that the appellees were on notice of any purported federal question on which removal could be based, at latest when the trust plaintiffs filed their class certification motion on September 3, 1991. That motion sought certification of a class of all persons "whose use, enjoyment, aesthetic and environmental interests in the protection and enhancement of the ecosystem, wildlife and other natural resources" were injured by the spill. The motion referred to the governmental, decree negotiations and the State's alleged conflict of interest. The appellants contend that any remov-

al notice should have been filed within 30 days of that motion.

However, as Judge Holland concluded, the case became removable only when the trust plaintiffs made clear after the consent decree was entered on October 8, 1991, that they intended to pursue additional relief for natural resource damage. The trust plaintiffs would have to be relieved of the consent decree in order to obtain damages beyond those awarded in the consent decree, because it was stated to be full compensation for the public's claim for natural resources damages.

■ The reply brief was served on October 22, 1991. Because notices of removal were filed on November 21, 1991, removal was within the 30-day period required by section 1446(b) and was timely. The consent decree itself could not have triggered removability because 28 U.S.C. § 1446(b) requires the receipt *by the defendants* of a paper in the action from which removability may be ascertained. The consent decree was not filed in state court in these cases. The reply brief triggered removal, and the Order No. 80 removal notices were timely.

### C. *Class Action Plaintiffs' Motion to Remand*

Appellants ask that 14 of the class actions and the *Wisner* case be remanded to state court because the removals were based on a misapplication of 28 U.S.C. § 1441(c). That statute provides:

> Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise nonremovable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.

28 U.S.C. § 1441(c) (Supp. IV 1992).

The plaintiffs in 15 class actions filed in state court filed an Amended Consolidated Class Action Complaint ("Consolidated Complaint").[2] One of the class actions among the

---

**2.** The 15 class actions were as follows: The Eyak Native Village, Cordova District Fishermen United, Prince William Sound Settnetters Association, Philip G. McCrudden, Samish Maritime,

Inc., Randall P. Babich, Albert Carroll, Ina Thorne, Edward Gregorieff, Kent Herschleb, Marc Van Driessche, Keith H. Gordaoff, Tom

15 was that filed by Alaska Sportfishing Association and several individuals. It is clear that this class action was properly removed because Alaska Sportfishing and the individuals joined the trust plaintiffs' action. The issue is whether the claims of the remaining class action plaintiffs were properly removed. This depends upon the resolution of whether the Consolidated Complaint joined all 15 class actions and, thus, made them removable as a group.

The Consolidated Complaint, filed on July 17, 1989, sought to create from the 15 separate class actions a consolidation into 5 new proposed classes. The complaint designated which of the plaintiffs in the 15 class actions would be representatives in the 5 superseding classes. The proposed classes were:

1. Alaska Native Class
2. Commercial Fishing Class
3. Processor/Distributor Class
4. Area Business Class
5. Use and Enjoyment Class.[3]

The appellants argue that the Amended Consolidated Complaint left intact the 15 prior class actions. However, this is not a situation in which the class representatives joined in a joint motion or discovery action. This is a situation in which a whole new complaint was voluntarily filed, designating five entirely different classes. The representatives of some of the new classes came from several of the prior classes; for example, the proposed representatives for the Commercial Fishing Class came from 12 of the previously separate class actions.

The plaintiffs in the Amended Consolidated Complaint were free voluntarily to file an amended complaint, joining their claims and designating new classes, because the defendants had not answered. No court order was required. The plaintiffs did not seek in the Consolidated Complaint to preserve the individual identity of their former class action complaints. As the district court observed, "Fifteen separate class actions could not be

transformed into 5 proposed classes without the claims being joined." The same principle applies to the plaintiffs in the *Wisner* case, who later joined in the consolidated action.

The class action plaintiffs argue that the Consolidated Complaint did not join the individual class actions because an earlier state pretrial consolidation order, entered by Judge Shortell, provided that papers filed in the *Exxon Valdez* litigation could be made applicable to multiple actions by including the title and docket number of each action in the caption of the document filed. The appellants contend that by listing each short title and docket number, the separate identities of the cases were preserved. They rely on *Katz v. Realty Equities Corp.*, 521 F.2d 1354, 1358 (2d Cir.1975), *In re Wirebound Boxes Antitrust Litigation*, 128 F.R.D. 262, 264 (D.Minn.1989), and *In re Equity Funding Corp. of America Securities Litigation*, 416 F.Supp. 161, 176–77 (C.D.Cal.1976), for the proposition that "consolidation cannot effect a physical merger of the actions or the defenses of the separate parties." *Katz*, 521 F.2d at 1358.

However, none of those cases involved the certification of classes that drew plaintiffs from a variety of other class actions. As we have noted in this litigation, several of the originally individual actions have plaintiffs in more than one new class, and several new classes certified by Judge Shortell contain plaintiffs from more than one of the original cases.

Furthermore, the removal context of the question before us also distinguishes *Katz*, *Wirebound Boxes*, and *Equity Funding*. In all three cited cases, the consolidated complaints were ordered by the district courts. Judge Shortell did not order the plaintiffs to file a consolidated complaint. In *Wirebound Boxes* and *Equity Funding*, the courts stated that at the conclusion of pretrial proceedings, they would consider whether it was appropriate to preserve for trial and judgment the separate identities of the actions consolidated

---

Copeland, Sea Hawk Seafoods, and Alaska Sportfishing Association.

**3.** In Pretrial Order No. 22, February 14, 1991, the Superior Court certified the Alaska Native Class, the Commercial Fishing Class, the Area

Business Class, and the Property Owner Class. The motion for certification of a Use and Enjoyment Class was denied in Pretrial Order No. 24, February 14, 1991.

for pretrial purposes. *Wirebound Boxes,* 128 F.R.D. at 264; *Equity Funding,* 416 F.Supp. at 177 n. 12. Judge Shortell made no similar statement. The appellants point to his use of the plural form of "cases" in certain of his orders, but there is no clear indication that the separate identities of the cases were to be preserved. In fact, as Judge Holland reasoned, the plaintiffs' proposal to form 5 classes out of 15 cases indicates just the opposite. Thus, we have more than consolidation alone. *See Katz,* 521 F.2d at 1358.

■ A class action is "a multiple joinder device, permitting the litigation, in one single action, of multiple claims involving similar or identical questions of law and fact, usually arising from the same set of operative facts." *Lesch v. Chicago & Eastern Illinois R.R. Co.,* 279 F.Supp. 908, 911 (N.D.Ill.1968). Although the appellants originally filed their class actions separately, they subsequently filed an amended complaint requesting five superseding classes to be constituted of their various individual plaintiffs. We hold that the class actions were joined.

Similarly, the *Wisner v. Exxon Corporation* plaintiffs became part of the action. They joined the class action plaintiffs' motion for class certification, even though the plaintiffs in *Wisner* had filed their own class action motion and complaint, and were not parties to the Consolidated Complaint. After the state court certified the classes, the *Wisner* plaintiffs became representatives of the Commercial Fishing Class, the Area Business Class, and the Property Owner Class. Thus, *Wisner* was joined with the other class actions.

Because the plaintiffs are all in the same case as plaintiffs Alaska Sportfishing Association, who were part of the proposed Conservation Trust Class, asserting a removable claim, Judge Holland properly determined that the claims of the class action plaintiffs were removable pursuant to 28 U.S.C. § 1441(c).

■ The class action plaintiffs contend that even if there were a joinder with the action of the trust plaintiffs, the removal was not proper because it failed to meet the "separate and independent claim" require-

ment of section 1441(c). The trust plaintiffs' claims are clearly separate and independent from the claims of the class action plaintiffs and *Wisner* plaintiffs. The plaintiffs are "proceeding to enforce rights that are individual to them," not rights that are jointly held by them. 1A James W. Moore, et al., Moore's Federal Practice ¶ 0.163, at 336 (2d ed. 1993). That is, each of the plaintiffs had a separate and independent claim against the defendants, which could have been sued upon alone without joinder of the other plaintiffs. *See, e.g., Northside Iron and Metal Co. v. Dobson and Johnson, Inc.,* 480 F.2d 798, 801 (5th Cir.1973). The trust plaintiffs were seeking relief for the general public for damages to the natural resources, whereas the class action plaintiffs were seeking compensatory relief for damages suffered by each member of their classes. The claims were separate and independent. The trust plaintiffs' claims were removable. Thus, the entire case is properly removable under section 1441(c). *See also Stokes v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 523 F.2d 433 (6th Cir.1975).

*American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951), does not counsel otherwise. *Finn* involved multiple claims by one plaintiff against three defendants, arising out of a fire loss on property owned by the plaintiff. *Id.* at 7–8, 71 S.Ct. at 537. The causes of action against two of the defendants, out-of-state insurance companies, would have been removable if sued upon alone. *Id.* at 8, 71 S.Ct. at 537.

The Court analyzed Finn's pleading and determined that a single wrong, the failure to compensate Finn for the property loss, had occurred, *id.* at 14, 71 S.Ct. at 540, and that substantially the same facts were contained in the allegations against all three defendants. Consequently, the Court concluded that the claims for relief were not separate and independent, and that removal was not justified. *Id.* at 16, 71 S.Ct. at 541.

It is not clear that the rationale of *Finn* applies to the claims of multiple plaintiffs. In any event, the multiple plaintiffs before us have suffered distinctly different harms as a result of the oil spill, and, if they prevail on their claims, are entitled to separate recover-

ies. Under the *Finn* definition of "cause of action," different "primary rights" are being asserted by different plaintiffs. The claims are separate and independent, and properly were removed.

### III.

### ORDERS NOS. 83, 91, 92, 108: ALYESKA REMOVALS

■ On February 13, 1992, Alyeska filed a notice of removal, based on the Plaintiffs' Preliminary Designation of Issues for Trial, filed February 3, 1992. The plaintiffs indicated in that paper that they would support their negligence claims at trial with evidence concerning Alyeska's disregard for tanker and equipment safety standards. Alyeska contended that this raised a federal question because any such claim would be barred by, or would amount to a collateral attack on, injunctions which several oil companies had obtained 15 years earlier against the state's enforcement of certain provisions of the 1976 Alaska Tanker law. *See Chevron, U.S.A., Inc. v. Hammond,* 1978 Am.Mar.Cas. 1697 (D.Alaska 1978) (some provisions of Alaska Tanker Law are preempted by federal Ports and Waterways Safety Act of 1972, 46 U.S.C. §§ 3701–3718 ("PWSA")).

In Orders Nos. 83, 91, 92, and 108, Judge Holland denied a motion to remand the approximately 150 cases removed by the Alyeska defendants on February 13, 1992. He reasoned that the state law claims were an indirect attempt to enforce the requirements of the Alaska Tanker Law and, therefore, were a collateral attack on *Chevron.* Judge Holland also rejected the plaintiffs' argument that Alyeska's removal was untimely.

The Alyeska removals were triggered by the plaintiffs' suggestion that they would support their negligence claims with evidence concerning Alyeska's disregard of tanker and equipment safety issues. Alyeska's theory of the removal is that any state tort remedy is preempted by the Ports and Waterways Safety Act, 46 U.S.C. §§ 3701–3718, and barred by past injunctions enforcing federal preemption against state regulatory action: Evidence concerning tanker design and other safety measures cannot be used to establish the proper standard of care because the court, in *Chevron v. Hammond, id.,* has already held that the PWSA preempts state regulation of tanker design and other safety measures. Alyeska reasons that the plaintiffs' action amounts to a collateral attack on the district court's past injunctions, and presents a general federal question. The district court held that the plaintiffs were mounting a collateral attack against *Chevron v. Hammond* because the plaintiffs indicated that they would ask the jury to characterize as "reckless" conduct that complies with federal law.

We need not consider the merits of these removals because the notices of removal at issue in Orders Nos. 83, 91, 92, and 108 were untimely. A notice of removal must be filed within 30 days after the defendant receives "a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable...." 28 U.S.C. § 1446(b). Alyeska's notices were filed 10 days after the February 3, 1992, filing of Plaintiffs' Preliminary Designation of Issues for April 1993 Trial in state court. However, no new claims were raised in that document.

The Preliminary Designation essentially asserted that Alyeska caused the oil spill by failing to require use of vessels with double hulls, failing to provide tug escorts and special monitoring systems, and by having the federal district court invalidate Alaska laws that required such measures in *Chevron v. Hammond,* No. A77–195 Civil. The plaintiffs also claimed natural resources damages. The removal was based on the theory that the plaintiffs were collaterally attacking the prior federal judgment in *Chevron.*

These claims were not new. The claims that Alyeska had negligently caused the spill were mentioned in the Plaintiffs' Supplemental Submission in Support of the Case Management Plan, filed Nov. 8, 1991. That memo stated that the factual issues included:

f. Whether the use of single hull, high tensile steel construction was sufficient to allow the *EXXON VALDEZ* to safely engage in the trade for which it was intended.

....

i. Whether defendants took adequate preventative measures to minimize the possibility of a spill, in view of the known risk of a spill.

The memo did not indicate in any way that paragraphs (f) and (i) did not apply to Alyeska.

Appellees contend that the claims related to double-hulled tankers were asserted only against Exxon Shipping Company and Exxon Corporation, not against the Alyeska defendants. They argue that the claims that Exxon Shipping Company or Exxon Corporation negligently caused the spill, in part because a single-hulled vessel was used, were not substantial enough to support removal as long as they were asserted only as part of a larger claim of negligence against Exxon Shipping Company and Exxon Corporation. *See Hunter v. United Van Lines*, 746 F.2d 635, 646 (9th Cir.1984), *cert. denied*, 474 U.S. 863, 106 S.Ct. 180, 88 L.Ed.2d 150 (1985). A *substantial* proposition of federal law must form a " 'direct and essential element of the *plaintiff's* cause of action' " for federal jurisdiction to be appropriate. *See id.* at 644 (citation omitted). The issue is whether, and when, this was so with regard to Alyeska, thereby enabling Alyeska to argue that the claims involved a collateral attack on *Chevron*.

Appellees contend that the plaintiffs asserted a new claim in the Preliminary Designation by arguing that Alyeska caused the spill by not requiring the measures at issue in *Chevron*. Thus, the federal issues became substantial enough to support removal when the Preliminary Designation was filed.

However, it is clear that Alyeska was aware of the nature of the plaintiffs' claims and their possible connection to *Chevron v. Hammond* long before the removal notices were filed. Eight months earlier, on May 31, 1991, Alyeska stated that the plaintiffs had alleged and put in question tanker design and operation, including the issue of double hulls, and that the actions could not be tried without discovery into the federal government's role in establishing tanker design.

The Defendants' Response explained how "the private defendants" would respond to those allegations, and did not distinguish between Alyeska and Exxon. The defendants clearly identified which defendants were concerned with certain of the plaintiffs' allegations.[4]

Further evidence that Alyeska was aware of the nature of the plaintiffs' claims is Alyeska's assertion of a federal preemption defense in its answer filed October 29, 1990, in which Alyeska stated, "certain claims of plaintiff are barred or limited by the comprehensive system of federal statutes and regulations and by maritime and admiralty law." Appellees contend that the defense did not refer to the PWSA and was not asserted to rebut a claim that the Alyeska defendants negligently caused the spill by failing to implement the measures at issue in *Chevron*. Rather, the answer was intended to preserve the defense that some of plaintiffs' claims related to the alleged negligence in the clean up were preempted by the TAPAA. However, the plain language of paragraph 13 of the answer is quite broad, and separate affirmative defenses asserted in the answer refer to TAPAA. Although the defense of preemption does not support removal, the answer indicates that Alyeska was aware at that time of the nature of the plaintiffs' claims and their possible connection to *Chevron v. Hammond*.

Alyeska's removal notices were untimely.

### CONCLUSION

Order No. 80 is affirmed. The other orders are reversed, and the case is remanded to the district court for further proceedings consistent with this opinion.

**AFFIRMED IN PART AND REVERSED IN PART AND REMANDED.**

---

**4.** For example, in the very next section of the response, the defendants explain how Exxon Shipping and Exxon Corporation would respond to other allegations concerning details of the accident. Alyeska is not mentioned in that section.