**ARIZONA MINORITY COALITION FOR FAIR REDISTRICTING, et al. Plaintiffs,**

**v.**

**ARIZONA INDEPENDENT REDISTRICTING COMMISSION, et al. Defendants.**

**No. CV031036–PHXROS.**

United States District Court, D. Arizona.

Sept. 5, 2003.

Paul F. Eckstein, Esq., Michael S. Mandell, Brown & Bain PA, John P. Frank, Esq., Richard A. Halloran, Esq., Joshua Grabel, Lewis & Roca LLP, Aaron Kizer, Esq., Alan David Braun, Esq., George M. Sterling, Esq., Phoenix, AZ, for Plaintiffs.

Lisa Tewksbury Hauser, Esq., Cameron Charles Artigue, Esq., Leonard W. Aragon, Gammage & Burnham PLC, Jose de Jesus Rivera, Esq., Haralson Miller Pitt & McAnally PLC, Mary Ruth O'Grady, Joseph Andrew Kanefield, Phoenix, AZ, for Defendants.

## ORDER

SILVER, District Judge.

On May 30, 2003, Defendants removed this case, alleging a challenge to the legislative and Congressional districts drawn by the Defendant Arizona Independent Redistricting Commission ("the Commission"), from state court. Pending before the Court are the Plaintiff Arizona Minority Coalition's ("Coalition") Motion to Remand and Plaintiff–Intervenor Navajo Nation's Motion to Remand ("Motions"). The Motions to remand will be granted.

### I. Background

On March 6, 2002, the Arizona Minority Coalition, together with a number of other Plaintiffs, filed a complaint in Maricopa County Superior Court in this action challenging the legality of the legislative districts drawn by the Arizona Independent Redistricting Commission. The complaint sought mandamus, declaratory, and injunctive relief under Arizona law. On March 14, 2002, a number of other Plaintiffs (the "Ricarte Plaintiffs") filed a separate action challenging the federal Congressional districts drawn by the Commission. The two actions were consolidated in state court, and many parties, including the Navajo Nation, intervened on both sides.

In May 2002, many of the same parties, including the Coalition, the Navajo Nation. and the Commission, filed suit in federal court for a three-judge panel to establish an interim Arizona legislative redistricting plan for the 2002 elections and that approved an interim redistricting plan for the 2002 elections. *Navajo Nation v. Arizona Independent Redistricting Commission*, 230 F.Supp.2d 998 (D.Ariz.2002). The Commission then adopted a new legislative map in August 2002 for elections from 2004 through 2010. The Coalition filed an Amended Complaint on October 16, 2002 challenging the new maps, again seeking relief only under state law. The matter was set for trial in state court beginning on July 8, 2003. However, before trial, the parties filed a final round of cross-motions for summary judgment, including, on May 15, 2003, a Motion for Summary Judgment (the "May 15 Motion") filed by the Coalition expressly arguing that the Commission's August 2002 redistricting plan "violates the equal protection and due process clauses of the United States Constitution and the Arizona Constitution." Motion at 2.

On May 30, 2003, Defendants filed a Notice of Removal on the premise that the Coalition had introduced a new federal claim in its May 15 Motion. On June 15, 2003, the Coalition and the Ricarte Plaintiffs filed Arizona Minority Coalition and Ricarte Plaintiffs' Motion to Remand, and Navajo Nation filed a Motion to Remand, or in the Alternative, for Severance and Remand ("Remand Motions"). On July 23, 2003, the Court granted a Motion to Transfer the case from Judge Broomfield to this Court in light of the Court's previous involvement in the redistricting

litigation in *Navajo Nation.* Before considering whether to convene a three-judge panel, the Court must determine if it possesses jurisdiction or must remand the case to state court.[1]

## II. Federal Jurisdiction

### A. The law

 "A civil action filed in a state court may be removed to federal court if the claim is one 'arising under' federal law. [28 U.S.C.] § 1441. To determine whether the claim arises under federal law, [courts] examine the 'well-pleaded' allegations of the complaint and ignore potential defenses." *Beneficial National Bank v. Anderson,* —— U.S. ——, ——, 123 S.Ct. 2058, 2062, 156 L.Ed.2d 1 (2003). "The plaintiff is the master of his or her complaint and many avoid federal jurisdiction by exclusive reliance on state law." *Easton v. Crossland Mortgage Corp.,* 114 F.3d 979, 982 (9th Cir.1997). However, "[a] plaintiff may not avoid federal jurisdiction by omitting from the complaint federal law essential to his or her claim or by casting in state law terms a claim that can be made only under federal law." *Easton,* 114 F.3d at 982. Further, "[e]ven though state law creates appellant's causes of action, its case might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Board of State of Cal. v. Construction Laborers Vacation Trust for Southern Cal.,* 463 U.S. 1, 13, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

The procedure for removal jurisdiction is governed by 28 U.S.C. § 1446. Section 1446(b) provides, "[t]he notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based...." Further, "[i]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it first be ascertained that the case is one which is or has become removable...." Though the Amended Complaint was filed on October 16, 2002, Defendants contend that the notice of removal is timely filed on May 30 because the existence of a federal question was first disclosed within the Coalition's motion for summary judgment filed May 15, 2003.

All parties concede that the Court shall exercise § 1441 removal jurisdiction only if the Court finds federal question jurisdiction under 28 U.S.C. § 1331, which provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The Complaint itself

---

1. The Commission filed a Request for Three Judges Pursuant to 28 U.S.C. § 2284. However, the Court has the authority to decide a motion to remand before contacting the Chief Judge of the Unites States Court of Appeals of the Ninth Circuit to designate two other judges. *See* 28 U.S.C. § 2284(b)(3) ("A single judge may conduct all proceedings except the trial, and enter all orders permitted by the rules of civil procedure except as provided in this subsection."); *Carrigan v. Sunland–Tujunga Telephone Co.,* 263 F.2d 568, 572 (9th Cir.1959) (under § 2284, "it is not required that the additional judges be summoned, when, as here, it appears from the complaint itself that the case is not one within the jurisdiction of the court"); *Gonzalez v. Monterey County,* 808 F.Supp. 727, 731 (N.D.Cal.1992) (single judge may make determination of whether complaint states a "substantial" claim before convening of three-judge panel under § 2284). Because this Court has found that the case will be remanded, the request for a three-judge panel will be denied.

does not state a federal claim; the question presented is whether subsequent filings by the Coalition either reveal or create a federal claim sufficient to support federal question jurisdiction.

### B. The evolution of Plaintiffs' legal arguments

The potential jurisdictional questions in this case have arisen at a late stage of the state proceedings because Plaintiffs' original Complaint and Amended Complaint present only state claims, yet the Coalition's May 15 Motion asks for summary judgment on federal issues that are *not* mentioned in the Amended Complaint. Plaintiffs have offered a number of explanations for this apparent shift in legal theories, and in their Response to the Motion to Remand, argue unconvincingly that the May 15 Motion did not address federal equal protection and due process theories. To discern whether the Court has jurisdiction, the Court must first discern the precise nature of Plaintiffs' claims.

The Amended Complaint, filed October 16, 2002 seeks mandamus, declaratory relief, and injunctive relief for alleged violations of the Arizona Constitution. Specifically, the Complaint alleges violations of the so-called "Competitive Redistricting Clause," Ariz. Const. art. IV, part 2, § 1 ("the Clause"). Plaintiffs contend that the Commission did not comply with the Arizona Constitution's mandate that "[t]o the extent practicable, competitive districts should be favored where to do so would create no significant detriment to the other goals." Am Compl. ¶ 18.[2]

As more fully explained in *Navajo Nation*, 230 F.Supp.2d at 1001–2, the Clause was enacted pursuant to Proposition 106,

passed by the Arizona voters in November 2000, and requires the establishment of a "'clean slate' creating equally populous districts in a grid-like pattern across the state." *Id.* These districts are then adjusted by the Commission "as necessary" to accommodate six goals: compliance with the United States Constitution and the Voting Rights Act, and, "to the extent practicable," equal population between districts, geographically compact and contiguous districts, district boundaries that reflect communities of interest, district lines using visible geographic features, city, town and county boundaries, and undivided census tracts, and finally, competitive districts "where to do so would create no significant detriment to the other goals." Ariz. Const. art. IV, part 2, § 1(15). Thus, the Arizona Constitution mandates that the Commission favor competitive districts, though it diminishes the significance of this goal below the importance of the five other goals listed in the Clause.

In the Amended Complaint, Plaintiffs argue that the Commission ignored the goal of competitive districts, and base their argument on the Commission's rejection of a number of "test maps" created by Doug Johnson, a Commission redistricting consultant. Plaintiffs allege that "[t]hese test maps contain Legislative Districts that complied with all the redistricting criteria set forth in Proposition 106 and significantly increased the competitiveness of the legislative map adopted by the Commission on October 14, 2001." Am. Compl. ¶ 32. Further, they allege that "[t]he Commission rejected all of these changes to create more competitive Legislative Districts when it adopted its final legislative map for the 2004 through 2010 elections on

---

2. Unless otherwise noted, in the following discussion of the motions to remand, the Court's analysis of the Commission's proposed districts does not distinguish between the Congressional and legislative districts. The case

now includes challenges to both the legislative and Congressional districts, and the parties make no attempt to distinguish between them in the briefing on the Motion to Remand.

August 14, 2002." Am. Compl. ¶ 33. One of Plaintiffs' contentions is that the Commission "fail[ed] to utilize new and contemporaneous competitiveness data." Am. Compl. ¶ 36. Another contention directly relevant to Plaintiffs' later summary judgment argument is that,

> [t]hroughout the entire redistricting process, the Commission never defined the term 'significant detriment.' Nor did the Commission establish or apply any type of consistent standard to determine when a proposed competitive district adjustment caused 'significant detriment' to the other redistricting criteria. By failing to consistently define or utilize a significant detriment standard, the Commission failed to favor competitiveness as required by the Arizona Constitution.

Am Compl. ¶ 35.

Thus, one component of Plaintiffs' legal theory in the Amended Complaint is that the Commission was required to use "consistent standard[s]" and define what constituted a "significant detriment" to the goals specified in the Arizona Constitution when evaluating competing legislative district plans. The lack of defined standards by the Commission is critical to the Plaintiffs' argument because the Plaintiffs contend that "[t]he Commission failed to favor competitiveness in drafting the boundaries for Legislative Districts, despite the fact that it could do so without causing significant detriment to the other goals set forth in the Competitive Redistricting Clause, as it was required to do by the Arizona Constitution." Am. Compl. ¶ 44. Without consistent definitions of the standards and criteria, Plaintiffs argue, the Commission ignored plans that *met all of the other criteria* while increasing the number of competitive districts.

In its motion for summary judgment, Plaintiffs advance a similar argument, that the Commission had an obligation to define the terms of the Arizona Constitutional goals before evaluating them in the context of proposed plans, but characterize the argument in *federal* terms. In fact, their argument goes further, arguing that the Commission was obligated to define terms like "community of interest" in addition to the term "significant detriment." [3] They argue that the Commission's plan "violates the equal protection and due process clauses of the United States Constitution and the Arizona Constitution," that "[t]he equal protection clauses required the Commission to create and utilize uniform rules to ensure uniform treatment of [the votes of] all Arizona vote[rs] during the redistricting process," and that [t]he "Commission violated this obligation by failing or refusing to define key terms in Proposition 106 that govern the redistricting process." Mot. for Summ. Judg. at 2. Further, "the Commission violated the equal protection and due process clauses of the Fourteenth Amendment to the United States Constitution," "[v]oting is a fundamental right under both the United States and Arizona Constitutions," "federal courts apply strict scrutiny to review state action affecting the exercise of the right to vote," and "[t]he Equal Protection clauses of both the U.S. and Arizona Constitutions prohibit arbitrary and disparate treatment of Arizona voters during the redistricting process." *Id.* at 2, 7, 8. Additionally, Plaintiffs repeatedly cite *Bush v. Gore,* 531 U.S. 98, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000) (*per curiam*), a case that addresses federal equal protection principles in the context of state electoral processes.

---

**3.** Arguably, the new argument in the summary judgment motion is simply a necessary extension of Plaintiffs' original argument. If the Commission was required to meaningfully define "significant detriment," it would also need to define the other goals, such as "community of interest," to determine how to measure a "significant detriment" to those goals.

Thus, at the time of removal, Defendants were faced with an Amended Complaint containing state claims for mandamus, declaratory, and injunctive relief for violations of the Arizona Constitution, but a summary judgment motion relying in part on federal equal protection and due process principles for its legal theory.[4] On this basis, Defendants claim that Plaintiffs have interjected a federal question into the case, warranting removal. Defendants argue that the May 15 Motion either revealed a previous federal question implicit in the Amended Complaint or created a new federal question by stating a new claim. The Court disagrees.

## C. Federal question jurisdiction

■ Though the Court concludes that Plaintiffs have raised federal issues in their motions for summary judgment, this alone does not create a federal question. The Supreme Court has described the "long-settled understanding that the mere presence of a federal issue in a state cause of action does not automatically confer federal question jurisdiction." *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 813, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). In *Merrell Dow*, the Supreme Court concluded that "a complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation" cannot form the basis for federal question jurisdiction. *Id.* at 817, 106 S.Ct.

3229. Similarly, in *Wander v. Kaus*, 304 F.3d 856 (9th Cir.2002), the Ninth Circuit held that a state statute that provided a cause of action for a violation of one section of the American with Disabilities Act (ADA) did not create federal question jurisdiction where Congress did not intend a remedy for damages under that section of the ADA. *Id.* at 857.[5]

■ The most closely analogous case interpreting Supreme Court precedent on this issue in the Ninth Circuit is *Rains v. Criterion Systems, Inc.*, 80 F.3d 339 (9th Cir.1996). In *Rains*, the plaintiff sued for wrongful termination in violation of public policy under California law, claiming that he suffered religious discrimination. To state such a claim under California law, the plaintiff must set forth as one element that a fundamental public policy exists in "constitutional or statutory provisions." *Id.* at 343 (citations omitted). The plaintiff alleged a number of different policy foundations in his Complaint, including both Title VII and the laws of California. The defendants removed on the basis that his Complaint contained a federal question by relying on federal law under Title VII.[6]

The Ninth Circuit concluded that it lacked federal question jurisdiction. Noting that "federal question jurisdiction may still lie if 'it appears that some substantial, disputed question of federal law is a *necessary* element of one of the well-pleaded state claims,'" the Court concluded that the violation of Title VII was not a neces-

4. The nature of the alleged due process violations is not explained by Plaintiffs, whose arguments (and cases) rely on the right to vote under federal equal protection. The Court's analysis on jurisdiction is applicable to any due process claims as well, and the Court will focus on the equal protection claims that predominate.

5. Neither *Merrell Dow* nor *Wander* control the Court's disposition of this case because the intent of Congress to create a private cause of

action is not at issue here. Rather, the cases illustrate the principle that "the mere presence of a federal issue in a state cause of action does not automatically confer federal question jurisdiction." *Merrell Dow*, 478 U.S. at 813, 106 S.Ct. 3229 (1986).

6. Although a Plaintiff may allege a Title VII claim in either state or federal court, the presence of a Title VII claim in a complaint is sufficient to confer federal question jurisdiction. *Rains*, 80 F.3d at 344.

sary element of the plaintiff's claims. *Id.* at 345 (quoting *Franchise Tax Board,* 463 U.S. at 13, 103 S.Ct. 2841). The Court held that "[w]hen a claim can be supported by alternative and independent theories— one of which is a state law theory and one of which is a federal law theory—federal question jurisdiction does not attach because federal law is not a necessary element of the claim." *Id.* at 346.

■ This case is analogous to *Rains.* The Amended Complaint alleges that the Commission failed to properly interpret and apply the mandate of the Clause under the Arizona Constitution. Specifically, the Amended Complaint asserts that the Commission violated the Arizona Constitution by failing, in part, to define "significant detriment." Part of Plaintiff's claim, as revealed in the summary judgment motion, is that the equal protection clauses of *both* the federal and state constitutions require definitions of terms in order to apply them consistently. However, no matter how Plaintiffs unstrategically framed the argument in their motion for summary judgment, the equal protection argument is not a claim asserted in the Amended Complaint; instead it is an element of the state law claim that the Commission failed to properly apply Ariz. Const. art. IV, part 2, § 1. Moreover, equal protection under the United States Constitution is an alternative argument, because the equal protection clause of the Arizona Constitution is also asserted, and both clauses mandate the same result. *See Empress Adult Video & Bookstore v. City of Tucson,* 204 Ariz. 50, 59 P.3d 814 (2002) (Article II, § 13 of Arizona Constitution has the "same effect" as the equal protection clause of United States Constitution). In this case, Plaintiffs may argue and rely upon the state equal protection clause to assert their claims under Article IV, part 2, § 1 of the Arizona Constitution, and may cite federal law to support their interpretation of state equal protection principles. *See Phoenix*

*Newspapers, Inc. v. Purcell,* 187 Ariz. 74, 79, 927 P.2d 340, 345 (Ariz.App.1996) (holding Article II, § 13 of Arizona Constitution has "same effect" as equal protection clause of Fourteenth Amendment and applying federal equal protection cases to interpret Art. II, § 13). Because proof of a federal equal protection argument is only one alternative theory of the state cause of action, under Ninth Circuit precedent there is no federal question jurisdiction. *See Rains,* 80 F.3d at 347 ("[E]ven though Rains' action is supported by a federal theory, there is no substantial federal question because his claim is also supported by an independent state theory."). *See also Easton,* 114 F.3d at 981–2 (holding that "a complaint which reference federal theories, but did not seek federal remedies" should have been remanded for lack of federal question jurisdiction); Am. Compl. ¶¶ 46–57 (requesting only state remedies for violation of the Arizona Constitution).

■ Indeed, despite Plaintiffs' repeated citations to *Bush v. Gore* in the May 15 Motion, Plaintiffs' reliance on the principles of that case illustrates how their claims are founded on state, not federal law. Notably, Plaintiffs are *not* presenting a claim under *Bush v. Gore,* but rather are seeking to invoke its principles in a different context. *Bush v. Gore* involved a challenge to Florida's use of inconsistent standards in its vote-counting process, directly implicating whether any particular vote was treated in an arbitrary or inconsistent manner in the course of the recount. In contrast, Plaintiffs here advance a different claim, which is that the state must apply consistent standards in redistricting, a different but related aspect of the states' regulation of the voting process. States are generally free to conduct redistricting according to any standards they choose, unless they run afoul of certain constitu-

tional or statutory prohibitions. *See, e.g., Georgia v. Ashcroft,* —— U.S. ——, 123 S.Ct. 2498, 156 L.Ed.2d 428 (2003) (discussing measurement of racial retrogression in redistricting prohibited under Voting Rights Act); *Shaw v. Reno,* 509 U.S. 630, 113 S.Ct. 2816, 125 L.Ed.2d 511 (1993) (allowing equal protection challenges to redistricting based on racial classifications); *Davis v. Bandemer,* 478 U.S. 109, 106 S.Ct. 2797, 92 L.Ed.2d 85 (1986) (holding justiciable a challenge to process of redistricting based on partisan gerrymandering); *cf. Vieth v. Pennsylvania,* 188 F.Supp.2d 532 (M.D.Pa.2002) (dismissing partisan gerrymandering claim for failure to state a claim), *probable jurisdiction noted, Vieth v. Jubelirer,* —— U.S. ——, 123 S.Ct. 2652, 156 L.Ed.2d 654 (2003). Plaintiffs' equal protection argument is thus uniquely founded on the *Arizona Constitution* that mandates certain factors be considered in the course of redistricting. The claims for mandamus, declaratory, and injunctive relief are state remedies for a violation of the Arizona Constitution, and the Arizona equal protection clause does not require reliance upon federal law to determine if it has been violated. .

██ Defendants make one additional argument for federal jurisdiction, which is that the motion for summary judgment itself created a *new* cause of action based on equal protection, thus allowing removal of the newly-created federal claim. In support of this theory, Defendants point to one unique case, *Eyak Native Village v. Exxon Corp.,* 25 F.3d 773 (9th Cir.1994). In *Eyak Native Village,* the Ninth Circuit held that a reply brief in a state proceeding, interpreted by the district court as a

Fed.R.Civ.P. 60(b) independent action for relief from a consent decree, was an "other paper" under § 1446(b) which allowed the defendants to timely remove the case to federal court. In that case, the state court litigation was ongoing while in a federal court action, the district court approved a consent decree between the defendants and the state which threatened to create *res judicata* that would bar the plaintiffs' state claims. The plaintiffs filed a reply brief in state court asserting that there was no *res judicata* barring the state claims because the State did not represent their interests in the federal proceedings. The district court "concluded that the . . . reply brief raised a federal claim in the form of an independent civil action in equity, or a Federal Rule of Civil Procedure 60(b)(3) motion for relief from the consent decree." *Id.* at 777. Although the Ninth Circuit noted that the reply brief could not be treated as a Rule 60(b) motion, it held that the "district court's treatment of the . . . plaintiffs' claims as an independent action for relief from judgment recharacterized their claims as federal claims." *Id.* at 778.[7]

*Eyak Native Village,* however, is not applicable, because the basis of federal question jurisdiction in that case, a collateral attack on a federal consent decree, does not even resemble the issue in this case. The question of whether the motion for summary judgment created a federal cause of action is preliminary to whether the motion is an "other paper" under § 1446, and Defendants provide no authority for construing Plaintiffs' summary judgment motion as a new cause of action.

---

7. The federal district court in that case had a strong interest in interpreting the plaintiffs' reply brief raising res judicata issues as a Rule 60 or similar equitable attack on the consent decree, because the federal consent decree functioned as res judicata to bar the plaintiffs' claims. *See Gilmore v. California,* 220 F.3d 987, 1001 n. 17 (9th Cir.2000) (consent decrees act as final judgments and have res judicata effect); *Hook v. Arizona Dep't of Corrections,* 972 F.2d 1012, 1016 (9th Cir. 1992) ("The proper procedure for seeking relief from a consent decree is a Rule 60(b) motion.").

Indeed, in *Eyak Native Village*, the Court was clear that the "district court's treatment of the ... plaintiffs' claims as an independent action for relief from judgment recharacterized their claims as federal claims." *Id.* at 778. *See Desmond v. BankAmerica Corp.*, 120 F.Supp.2d 1201, 1204 (N.D.Cal.2000) (rejecting removal jurisdiction based on *Eyak Native Village* and noting, "[t]he court *did not* hold that intent to pursue a federal claim, expressed in a brief or motion, is grounds for removal. ... In *Eyak*, the filing of the reply brief was tantamount to the filing of a new action or amended complaint"). Only once the case became removable by the interjection of a federal claim did the Court analyze § 1446(b), and the "other paper" provision was only at issue because the new federal claim was implied from a reply brief, not stated in a pleading.

Defendants' argument that the text of § 1446(b) supports their conclusion that the motion for summary judgment may be treated as creating a federal issue is unavailing. Section 1446(b) establishes only the *timing* of a notice of removal; it provides that "a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it first be ascertained that the case is one which is or has become removable." Section 1446(b) does not purport to define *whether* a federal court has jurisdiction over a claim. The fact that a subsequent paper may disclose the existence of federal jurisdiction is not a controversial proposition, and often occurs in diversity cases, where the citizenship of the parties or the amount in controversy changes. *See* 14C Wright, Miller, & Cooper, *Federal Practice and Procedure 3d* § 3732, n. 24–4 (1998). The existence of a federal question is governed by § 1331 along with the cases interpreting it, including *Merrell Dow* and *Rains*.

## Conclusion

Although a consideration of federal issues has a place in the complaint, Plaintiffs present evidence involving state law claims which, although they may overlap some potential federal causes of action, do not depend on the federal issues. The Court has no jurisdiction, and the entire matter will be remanded to state court.

 Plaintiffs seek attorneys' fees and costs incurred as a result of the removal. Although Plaintiffs' explanations of their claim have been underrated by Defendants in their Response, Plaintiffs' choice of language in its May 15 Motion in contrast to the carefully crafted language of the Complaint and Amended Complaint created confusion requiring analysis of applicable case law regarding the possible emergence of a federal cause of action in pleading on the Motion for Summary Judgment. While a seeming strategic legal mishap did not vest the Court with federal jurisdiction, it may disallow an entitlement to attorneys' fees and costs.

Accordingly,

**IT IS ORDERED** that Plaintiff Arizona Minority Coalition and Ricarte Plaintiffs' Motion to Remand is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff–Intervenor Navajo Nation's Motion to Remand is **GRANTED** and the Motion for Severance and Remand is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Arizona Independent Redistricting Commission's Request for Three Judges is **DENIED**.

**IT IS FURTHER ORDERED REMANDING** this case in its entirety to state court, attorneys' fees and costs to be borne by each side.