In re LA SIERRA FINANCIAL
SERVICES, INC., Debtor.

Daniel Hasso, Appellant,

v.

Steven L. Mozsgai and Cecilia A. Mozsgai, Trustees of the Steven L. Mozsgai and Cecilia A. Mozsgai Revocable Living Trust dated May 4, 1999, Appellees.

BAP No. CC–01–1541–MAMOB.
Bankruptcy No. SA 94–13774–JB.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted June 19, 2002.

Filed Nov. 29, 2002.

Stephen W. Johnson, Santa Ana, CA, for Daniel Hasso.

Kirk S. Rense, Irvine, CA, for Steven Mozsgai and Cecilia Mozsgai.

Before: MARLAR, MONTALI and BRANDT, Bankruptcy Judges.

## OPINION

MARLAR, Bankruptcy Judge.

### INTRODUCTION

In this appeal we consider the standing of subsequent purchasers of property sold

by a bankruptcy estate to appear in cases and seek relief from orders which may affect their property interests. We AFFIRM the relief granted to them by the bankruptcy court.

## FACTS

In 1990, La Sierra Financial Services, Inc. ("Debtor") was the holder of a note and deed of trust in real property known as Lot 33, at 1 Rolling View Lane, in Fallbrook, California (the "Property"). In 1991, Debtor purportedly assigned its interest in the deed of trust to appellant Daniel Hasso ("Hasso").

In 1994, an involuntary bankruptcy was filed against Debtor. An order of relief was entered and the case was then converted to a voluntary chapter 11[1] case, and a trustee ("Trustee") was appointed. Debtor's schedules listed the Property as property of the estate, and the estate was subsequently given a deed in lieu of foreclosure. Trustee moved for approval to sell the Property, but did not give Hasso notice of the sale motion. On December 22, 1994, the court approved the sale of the Property, free and clear of liens, to Tony and Jude Ann Kempf ("Kempfs").

In May, 1995, Trustee moved to amend the sale order, in part by reducing the sale price. An order approving the sale, as amended, was entered on June 16, 1995. The sale then closed and the Property was transferred to the Kempfs.

Three years later, in April, 1998, Hasso moved for partial vacatur of the December 22, 1994 and June 16, 1995 sale orders ("Sale Orders"), asserting lack of due process and that the Sale Orders were therefore void in regard to his purported lien interest.

At the hearing, the court found that Hasso's right to due process was violated by Trustee's failure properly to serve Hasso with the sale motion. The court also expressed concern about whether Hasso had given proper notice of *his* motion to the Kempfs, whose ownership rights would be directly affected by the court's order, and who had not appeared. Hasso assured the court that he had mailed his motion to the Kempfs. He actually had mailed it to the Property address at "1 Rolling View Lane," instead of to the Kempfs' residence at "3 Rolling View Lane."

In its July 15, 1998 order ("Hasso Vacatur Order"), the court vacated the Sale Orders "to the extent that [they purported] to affect the rights of Daniel Hasso with respect to any [lien] interest he may have in the Fallbrook Property." This judgment effectively revived Hasso's lien. The Kempfs then sold the Property to Judith Brilliant ("Brilliant").

Two years after obtaining partial relief from the Sale Orders, in June, 2000, Hasso, as beneficiary under the deed of trust, commenced foreclosure against the Property, indicating a debt balance of $886,368.

In July 2000, Brilliant sold the Property to Steven L. Mozsgai and Cecilia A. Mozsgai, Trustees of the Steven L. Mozsgai and Cecilia A. Mozsgai Revocable Living Trust dated May 4, 1999 ("Mozsgai"), the appellees herein. Mozsgai brought a quiet title action in state court, and posted a bond to stay Hasso's foreclosure.

Mozsgai then filed, in bankruptcy court, a motion to vacate the Hasso Vacatur Order, supported by the declaration of Anthony Kempf, dated February 23, 2001. Mr. Kempf averred that he and his wife lived at "3 Rolling View Lane," from May of 1996 to August of 1998, but that "[n]either my wife nor I ever resided at the

---

1. Chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

property at 1 Rolling View Lane." Mozsgai thus asserted that, since Hasso's motion was sent to the wrong address, the Hasso Vacatur Order was void for lack of due process.

Hasso opposed the motion, without alleging that the Kempfs had actual notice of his 1998 motion. However, at a hearing on Mozsgai's motion, Hasso requested a continuance to conduct discovery concerning the Kempf's actual notice. The court denied the continuance, and found that Mozsgai had carried the burden of proof that the Kempfs had not been given the required notice of Hasso's motion.

On August 28, 2001, the court entered its order ("Mozsgai Vacatur Order") vacating the Hasso Vacatur Order in its entirety. Thus, once again, Hasso found himself without a lien on the Property.

Hasso filed a timely motion for reconsideration. He contended that the court's finding of lack of notice to the Kempfs was erroneous, and that the court also erred by refusing to continue the matter for discovery and a more extensive evidentiary hearing.

Hasso filed a copy of a United States Postal Service guideline, which stated its policy to deliver mail to known addressees even if it is otherwise undeliverable at the address given. Hasso also filed declarations stating that the motion, which was mailed to the Kempfs at "1 Rolling View Lane," had not been returned as undeliverable.

Mozsgai filed an opposition, and then, just days before the hearing, Hasso filed a reply, to which he attached Mr. Kempf's

new September 30, 2001, declaration, in which Mr. Kempf stated:

3. I informed counsel for Mozsgais that we had received mail from [Hasso's attorney] in 1998 that had not been properly addressed to us. It was my position, and remains my position, that such mailing with the wrong address did not constitute proper service, and we did not need to respond.

When the motion for reconsideration was heard, the court stated that the tardy declaration was "iffy at best" with regard to what mail Mr. Kempf received and when he was served. (Transcript, October 9, 2001, at 4:13–14.) The court further stated that this evidence could have been presented in the hearing on the original motion.[2]

Hasso again requested a continuance for discovery. The court denied the motion, without prejudice to Hasso's filing a renewed motion to vacate with proper notice. The order denying the motion for reconsideration was entered on October 30, 2001. Instead of refiling a motion to vacate, Hasso filed this appeal.

### ISSUES

1. Whether subsequent nonparty purchasers of property sold by a bankruptcy estate have standing to appear in cases and seek relief from orders which may affect their property interests.

2. Whether the Hasso Vacatur Order was void for lack of due process, and whether the court abused its discre-

---

**2.** Mozsgai provided Hasso with the Kempfs' address in discovery responses in the state court action. Hasso then alleged, throughout these proceedings, that he could not locate the Kempfs earlier because the address provided by Mozsgai was incorrect. In light of

Hasso's ability to file Mr. Kempf's declaration at the very last minute, the court properly gave little weight to this excuse, which did not rise to the level of an allegation of fraud or estoppel.

tion in denying Hasso's motion for reconsideration.

3. Whether the court abused its discretion in denying Hasso's request for a continuance to discover whether the Kempfs had actual notice of his 1998 motion to vacate the Sale Orders and restore his lien.

### STANDARDS OF REVIEW

■ Standing and the bankruptcy court's jurisdiction are legal issues, which we review *de novo*. *Culver, LLC v. Chiu (In re Chiu)*, 266 B.R. 743, 747 (9th Cir. BAP 2001), *aff'd*, 304 F.3d 905 (9th Cir. 2002); *United States v. 5145 N. Golden State Blvd.*, 135 F.3d 1312, 1314 (9th Cir. 1998).

■ The decision to set aside a judgment as void is reviewed *de novo*. *See Export Group v. Reef Indus., Inc.*, 54 F.3d 1466, 1469 (9th Cir.1995). Whether a person's due process rights have been violated is a mixed question of law and fact, which is reviewed *de novo*. *Wilborn v. Gallagher (In re Wilborn)*, 205 B.R. 202, 206 (9th Cir. BAP 1996).

■ The bankruptcy court's denial of a continuance and its discovery decisions are reviewed for an abuse of discretion. *United States ex rel. Hawaiian Rock Prods. Corp. v. A.E. Lopez Enters., Ltd.*, 74 F.3d 972, 976 (9th Cir.1996); *Paulman v. Gateway Venture Partners III, L.P. (In re Filtercorp, Inc.)*, 163 F.3d 570, 584 (9th Cir.1998). The court's denial of a motion for reconsideration is reviewed for an abuse of discretion. *See Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001). "A court abuses its discretion when it bases its decision on an erroneous conclusion of law or when the record contains

no evidence on which it could rationally base its decision." *United States v. Prairie Pharmacy, Inc.*, 921 F.2d 211, 212 (9th Cir.1990) (citation omitted).

### DISCUSSION

### A. Property Owners Have Standing to Appear in and Initiate Rule 60(b)[3] Motions which Affect their Interests

The bankruptcy court found that both the Kempfs and Mozsgai, respectively, were pecuniarily affected by the Rule 60(b) hearings in bankruptcy court and thus had standing to appear therein. Hasso disagrees, maintaining that they were not parties to the Sale Orders, and that Mozsgai cannot assert the Kempfs' due process rights.

■ The doctrine of standing encompasses both constitutional limitations on federal court jurisdiction, i.e., the "case" or "controversy" requirement of Article III, and prudential limitations on a court's exercise of that jurisdiction. The party asserting standing bears the burden of proving it. *Bennett v. Spear*, 520 U.S. 154, 167–68, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997).

■ Constitutional standing requires: (1) that the plaintiff have suffered an "injury in fact"—an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that there be a causal connection between the injury and the conduct complained of—the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) that

---

**3.** Federal Rule of Civil Procedure 60(b), incorporated by Federal Rule of Bankruptcy Procedure 9024. Unless otherwise indicated, rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

it be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* at 167, 117 S.Ct. 1154.

██ Prudential standing requires that a plaintiff's grievance must fall within the "zone of interest" protected by the statute or constitutional right invoked and that a litigant must assert his or her own rights or interests and not those of a third party. *Bennett,* 520 U.S. at 162, 117 S.Ct. 1154; *see also Chiu,* 266 B.R. at 748–50 (listing limitations on standing).

Rule 60(b) states, in relevant part:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (4) the judgment is void.

██ "Rule 60(b) does not *grant* anyone standing to bring an independent action; it merely does not restrict any standing a party otherwise has." *Herring v. F.D.I.C.,* 82 F.3d 282, 285 (9th Cir.1995) (emphasis in original). The general rule (with the possible exception of claims of fraud on the court) "is that one must either be a party or a party's legal representative in order to have standing to bring any Rule 60(b) motion." *Kem Mfg. Corp. v. Wilder,* 817 F.2d 1517, 1520 (11th Cir. 1987).

### 1. The Kempfs were Interested Parties in Hasso's Motion

The basis for Mozsgai's motion to set aside the Hasso Vacatur Order was that the Kempfs had not been afforded due process because notice to them was defective. Hasso maintains that the Kempfs did not come within the zone of interests for his 1998 motion because they were not parties to the Sale Orders which he was seeking to vacate in part. Therefore, we first examine the notice requirement for Hasso's motion.

Rule 9013 provides that written motions "shall be served by the moving party on the trustee or debtor in possession and on those entities specified by these rules, or if service is not required or the entities to be served are not specified by these rules, the moving party shall serve the entities the court directs." Fed. R. Bankr.P. 9013.

██ The Kempfs, being third-party buyers, were not entitled to statutory notice of Trustee's sale motions. *See* Fed. R. Bankr.P. 2002(a), 6004. However, when Hasso sought to vacate the Sale Orders two years later and to reassert his $800,000 lien in what was then the Kempfs' property, his motion directly affected the Kempfs. The Kempfs were faced with an "injury in fact" sufficient to confer upon them constitutional standing.

The bankruptcy court further deemed the Kempfs interested parties in Hasso's motion and ruled that they should be given notice:

THE COURT: What about the—this question of service on the present ... owners?

MR. BLANK: The present owners. But we served them because we figured they'd want to know about it, and I was surprised that they didn't attempt to respond to it.

THE COURT: Well, doesn't this affect their rights?

MR. BLANK: Yes, I think it does.

THE COURT: Directly, it does.

MR. BLANK: Yes.

Transcript, June 30, 1998, at 37–39.

Section 1109(b) provides that a party in interest "may raise and may appear and be heard on any issue in a case under this

chapter." 11 U.S.C. § 1109(b).[4] The Code does not define "interested party," but gives a list of inapplicable, but nonexclusive, examples. *See* 11 U.S.C. § 102(3) (stating that "includes" or "including" are not limiting terms). A third party claiming to hold a pecuniary interest in property is an "interested party" under this provision. *See In re Koch,* 229 B.R. 78, 82 (Bankr.E.D.N.Y.1999) (NBA allowed to intervene to set aside order reopening case where it had an actual, direct interest in the case by claiming to own property of the estate).

Section 1109(b) is implemented by Rule 2018, which provides that "... for cause shown, the court may permit any interested entity to intervene generally or with respect to any specified matter." Fed. R. Bankr.P. 2018(a). "Cause" may be an economic interest or the fact that no other entity exists to adequately protect the interested entity's position. 9 *Collier on Bankruptcy* ¶ 2018.04[3] (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev. 2002). This rule also permits the court to require that notice be given to such interested parties. Fed. R. Bankr.P. 2018(e).

Here, the court not only deemed the Kempfs to be interested parties, but in addition required Hasso to serve them with his motion to vacate, in part, the Sale Orders and reimpose his lien, which motion affected them directly and pecuniarily.

■ Hasso did not appeal the bankruptcy court's use of its discretion in this matter; thus he waived any objection to the Kempfs' status as interested parties. Indeed, in order to obtain relief at the 1998 hearing, Hasso, through his attorney, admitted that the Kempfs were interested parties. Therefore, Hasso is also judicially estopped from now asserting that the Kempfs were not entitled to notice. *Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 782 (9th Cir.2001) (doctrine prevents a party from gaining an advantage by taking inconsistent positions).

### 2. *Mozsgai has Standing to Seek Vacatur*

Hasso contends Mozsgai lacks standing to assert a violation of the Kempfs' rights in the current proceeding. We disagree, and conclude that Mozsgai has standing, both as the Kempfs' privy and independently.

■ A judgment may be set aside as void under Rule 60(b)(4) if the court acted in a manner inconsistent with due process of law. *Owens–Corning Fiberglas Corp. v. Center Wholesale, Inc. (In re Center Wholesale, Inc.),* 759 F.2d 1440, 1448 (9th Cir.1985). Rule 60(b) states that it may be utilized by "a party or a party's legal representative." Fed.R.Civ.P. 60(b). The provision allowing one who is in "privity" with a party to move for relief is an exception to the general rule that a nonparty lacks standing to make such a motion. *See* 11 Charles Alan Wright, Arthur Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 2865 (1995 & Supp.2002). *See also Nat'l Acceptance Co. of Am., Inc. v. Frigidmeats, Inc.,* 627 F.2d 764, 766 (7th Cir.1980) (party claiming to have a prior security interest in inventory lacked standing to set aside turnover orders because it was neither a party nor in privity with a party.)

---

4. Section 1109(b), in its entirety, reads:
(b) A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.
11 U.S.C. § 1109(b).

■ " 'Privity' ... is a legal conclusion 'designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved.' " *United States v. Schimmels (In re Schimmels)*, 127 F.3d 875, 881 (9th Cir.1997) (quoting *Southwest Airlines Co. v. Tex. Int'l Airlines, Inc.*, 546 F.2d 84, 94 (5th Cir.1977) and defining "privity" for purposes of claim preclusion). *See also Wilder*, 817 F.2d at 1520 ("[T]he term legal representative was intended to reach only those individuals who were in a position tantamount to that of a party or whose legal rights were otherwise so intimately bound up with the parties that their rights were directly affected by the final judgment.").

■ A party in privity is bound in the same way the party is bound. *See Rivet v. Regions Bank of La.*, 522 U.S. 470, 476, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998) ("Under the doctrine of claim preclusion, '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.' ") (citation omitted). A void judgment cannot be the basis for *res judicata* and has no such effect in bankruptcy. *Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195, 1202 (5th Cir.1996). As parties are not bound, neither are privies.[5]

■ Mozsgai's interest is precisely the same property interest which the Kempfs had in 1998. Since the Kempfs were interested parties in Hasso's motion, so, too, is Mozsgai. Mozsgai is therefore in "privity" with the Kempfs, who were interested parties in the Hasso Vacatur Order, but were denied the opportunity to become formal parties for lack of notice.

■ Mozsgai also has independent standing to move to set aside the Hasso Vacatur Order because Mozsgai would be adversely affected if the court did not modify or vacate the Hasso Vacatur Order. *See Cheadle v. Appleatchee Riders Ass'n (In re Lovitt)*, 757 F.2d 1035, 1039 (9th Cir.1985) (holding that a nonparty, who claimed an interest in property which was affected by a judgment between others, had standing to seek a determination that the judgment did not cloud his title); *see also Stoll v. Quintanar (In re Stoll)*, 252 B.R. 492, 496 (9th Cir. BAP 2000).[6]

In *Lovitt*, the unnoticed purchaser of mineral leases objected on the grounds that the movant lacked standing to set aside the sale because it was a nonparty. The Ninth Circuit found that Rule 60(b) did not govern the motion because the movant was neither a party, nor in privity with, a party to the *ex parte* sale order. It then looked to the *Restatement (Second) of*

**5.** Hasso contends that the preclusive effect of the order on Mozsgai is an issue that can be determined in state court, but should not be used to give unnecessary "ancillary jurisdiction" to the bankruptcy court. We disagree. To ascertain whether the Hasso Vacatur Order was void, the bankruptcy court had jurisdiction to examine the due process violation claim brought by Mozsgai.

**6.** Nonparties who have constitutional standing are often allowed to participate in litigation even if they have not followed the appropriate procedures, such as filing a motion to intervene. In the Ninth Circuit, technical defects in motions for intervention may be overlooked if a court is apprised, other than in a compliant pleading, of the grounds for such intervention. *See Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 474 (9th Cir. 1992) (construing Fed.R.Civ.P. 24(c), which is applicable in civil actions).

In our case, Trustee did not take the initiative in this matter, and it fell to Mozsgai to protect its own interest in the property. In effect, Mozsgai's motion was a deemed motion to intervene, pursuant to § 1109(b) and Rule 2018.

*Judgments,* § 76 (1980), which provides that a nonparty, who is not bound by a judgment under the doctrine of *res judicata,* may still obtain a determination that the judgment is ineffective as to him if (1) the judgment jeopardizes a protectible interest of his and (2) the character of his interest warrants relief. *Id.* at 1039. It then affirmed the relief granted to the movant by the district court.

In *Center Wholesale,* a creditor, who was not a party to a cash collateral order, was found to have standing to make a Rule 60(b)(4) motion to vacate the order on due process grounds because its property rights were adversely affected by the challenged order. *Center Wholesale,* 759 F.2d at 1449–50.

 The Ninth Circuit has held that "[a] nonparty may seek relief from a judgment procured by fraud if the nonparty's interests are directly affected." *Eyak Native Village v. Exxon Corp.,* 25 F.3d 773, 777 (9th Cir.1994). In *Eyak Native Village,* environmental groups sought relief from a consent decree between the government and Exxon, concerning an oil spill, which they claimed was fraudulently obtained. The court held that the groups had standing because their interests were directly affected. *Id.* Although *Eyak Native Village* implicated Rule 60(b)(3) (fraud) and not (b)(4), *see id.,* we believe that is not a significant difference.[7]

 Hasso argues that breaking the general rule against nonparties seeking relief from a judgment would open the floodgates of litigation by allowing nonparties, even those far removed from the litigation by time and space, to revisit a final judgment. We agree that nonparties who would not be directly affected by the outcome of the action do not have the right to seek relief under Rule 60(b). *See Thomas, Head & Greisen Employees Trust v. Bust-*

---

7. There, the Ninth Circuit also considered the movants' standing in light of the trial court's inherent power to investigate *sua sponte* a judgment procured by fraud. *Eyak,* 25 F.3d at 777. There is precedent in our circuit for the court's *sua sponte* power to vacate any void judgment. "Although FRCP 60(b) provides that a court may relieve a party from a final order upon motion, it does not prohibit a bankruptcy judge from reviewing, sua sponte, a previous order." *Meyer v. Lenox (In re Lenox),* 902 F.2d 737, 740 (9th Cir.1990). "[B]ankruptcy courts, as courts of equity, have the power to reconsider, modify or vacate their previous orders so long as no intervening rights have become vested in reliance on the orders." *Id.* at 739–40. *See also Cisneros v. United States (In re Cisneros),* 994 F.2d 1462, 1466 n. 4 (9th Cir.1993) (stating that issue of Rule 60(b)'s *sua sponte* application was "clearly foreclosed" by *Lenox*); *cf. Clifton v. Attorney General of Cal.,* 997 F.2d 660, 664 n. 6 (9th Cir.1993) (while holding that the district court had no authority to refuse to enforce an order on its own initiative, the Ninth Circuit also recognized the rule of *Lenox* as applying to bankruptcy cases).

*See also Wetmore v. Karrick,* 205 U.S. 141, 149, 27 S.Ct. 434, 51 L.Ed. 745 (1907) (stating that court could set aside a final judgment affecting substantive rights only if a "motion or proceeding" with notice and opportunity to be heard are given); *Mulvania v. United States (In re Mulvania),* 214 B.R. 1, 7–9 (9th Cir. BAP 1997) (the old inherent power to reconsider bankruptcy orders has been merged into Rule 60(b)). *See generally* 10 *Collier on Bankruptcy, supra,* ¶ 9024.03 (court may *sua sponte* reconsider its own orders under Rule 60(b), citing *Cisneros*); 11 Wright, Miller & Kane, *supra,* § 2862 ("Although the rule requires a motion for relief from the judgment, it has been held that the court on its own motion may set aside a void judgment provided notice has been given of its contemplated action and the party adversely affected has been given an opportunity to be heard.") and § 2865 ("[T]he court has power to act in the interest of justice in an unusual case in which its attention has been directed to the necessity for relief by means other than a motion.").

er, 95 F.3d 1449, 1460 n. 18 (9th Cir.1996) (Rule 60(b)(4) relief denied to a movant who did not claim a property interest at the time of the default judgment against its partner).

In contrast, Mozsgai has a direct pecuniary interest in the Hasso Vacatur Order because the order arguably reinstated an $800,000 lien on the Property. In addition, Mozsgai is in privity with the Kempfs, whose due process rights were violated. We therefore hold that real property owners, like Mozsgai, who have standing based on their affected property interests, may move pursuant to Rule 60(b)(4) to vacate orders that may directly and pecuniarily affect their interests.[8]

### 3. Bankruptcy Court had Subject Matter Jurisdiction

In granting the Mozsgai Vacatur Order, the bankruptcy court set aside its previous Hasso Vacatur Order, which, in turn, re-

vived the partially voided Sale Orders. Hasso's argument challenges the bankruptcy court's subject matter jurisdiction to resurrect the Sale Orders, because a void order is a "legal nullity." *Watts v. Pinckney,* 752 F.2d 406, 410 (9th Cir.1985).

A bankruptcy court always has the "power to reconsider, modify or vacate" its previous orders "so long as no intervening rights have become vested in reliance on the orders." *Lenox,* 902 F.2d at 740. Such power is now exercised under Rule 60(b). *See Mulvania,* 214 B.R. at 7–9, n. 7, *supra.* A void judgment "may lead a court to exercise its equitable jurisdiction." *Indian Head Nat'l Bank of Nashua v. Brunelle,* 689 F.2d 245, 249 n. 8 (1st Cir.1982), cited with approval in *F.D.I.C. v. Aaronian,* 93 F.3d 636, 639 (9th Cir.1996) (stating that Rule 60 explicitly preserves the court's inherent power to set aside a judgment in equity).[9]

---

**8.** Two cases cited by Hasso are distinguishable. *Western Steel Erection Co. v. United States,* 424 F.2d 737, 739 (10th Cir.1970), held that an attorney did not have standing to move as a "legal representative" under Rule 60(b).

*United States v. 5145 N. Golden State Blvd.,* 135 F.3d 1312 (9th Cir.1998) concerned an *in rem* civil forfeiture action, where it was determined that the government had provided notice which complied with due process to the property owner, who then failed to respond to the complaint and a default judgment was entered against him. When the owner then moved to set aside the judgment, the Ninth Circuit affirmed his lack of standing because he was not a party. The court stated: "Thus, while we are sympathetic to Patel's argument that civil forfeiture of his property represents a severe sanction, we conclude that Patel's failure to give the Government notice of his opposition to the forfeiture proceedings for more than a year after process was served precludes him from challenging the forfeiture now." *Id.* at 1317.

**9.** In addition to the court's ability to grant relief from judgments under Rule 60(b)(1–6), Rule 60(b) also has a separate savings clause

for independent actions, which provides: "This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, ... or to set aside a judgment for fraud upon the court." Fed.R.Civ.P. 60(b). *See generally* Wright, Miller & Kane, *supra,* § 2851.

The independent action is considered to be an exercise of the court's inherent authority which is preserved in Rule 60(b), as one court explained:

When a court grants relief from a judgment or decree by a new trial or rehearing, or by one of the ancillary common law or equitable remedies or their modern substitute, a motion, it is exercising a supervisory power of that court over its judgment; but the original bill, or independent action, to impeach for fraud, accident, mistake, or other equitable ground is founded upon an independent and substantive equitable jurisdiction.

*Brunelle,* 689 F.2d at 249 (quoting *Bankers Mortgage Co. v. United States,* 423 F.2d 73, 78–79 (5th Cir.1970)) (emphasis omitted).

The Supreme Court has opined that independent actions are available under the sav-

■ The effect of an order granting Rule 60(b) relief is to restore the parties to the position they were in before the court issued the vacated order. It is as if the vacated order had never been issued. *See, e.g., Cisneros,* 994 F.2d at 1466; *Lenox,* 902 F.2d at 739–40. *See also Graziadei v. Graziadei (In re Graziadei),* 32 F.3d 1408, 1411 (9th Cir.1994) ("When we hold an order void, we must, if requested, undo the effect of that order and restore the parties to the *status quo ante.*").

■ Thus, when the bankruptcy court vacated the Hasso Vacatur Order, it revisited the Sale Orders insofar as they may have affected Hasso's alleged lien. Jurisdiction was present as necessary to afford all affected parties any relief to which they were entitled. We conclude, therefore, that the bankruptcy court had subject matter jurisdiction for its ruling.

### B. Service on the Kempfs did not Satisfy Due Process

■ The bankruptcy court ruled that the Hasso Vacatur Order was void for insufficient notice to the Kempfs. "[T]here is no discretion to refuse to vacate a judgment if it is void." *Kaczmarczik v. Van Meter (In re Van Meter),* 175 B.R. 64, 67 (9th Cir. BAP 1994). Mozsgai bore the burden of establishing entitlement to relief under Rule 60(b)(4). *See Martinelli v. Valley Bank of Nev. (In re Martinelli),* 96 B.R. 1011, 1013 (9th Cir. BAP 1988).

■ Under Rule 60(b)(4), a judgment is void "only if the court that rendered judgment lacked jurisdiction of the subject matter, or of the parties, or if the court acted in a manner inconsistent with

due process of law." *Center Wholesale,* 759 F.2d at 1448. For relief, the circumstances must cross over the line from mere procedural error to error that violates the Due Process Clause of the Fifth Amendment. *GMAC Mortgage Corp. v. Salisbury (In re Loloee),* 241 B.R. 655, 660 (9th Cir. BAP 1999) (citing *Center Wholesale,* 759 F.2d at 1448). The Due Process Clause provides that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V.

■ The standard for notice which complies with the Due Process Clause is "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

■ Motions such as those filed by Hasso and Mozsgai, which resulted in the Hasso Vacatur Order and the Mozsgai Vacatur Order, commence contested matters under Rule 9014. Under that rule there must be reasonable notice and an opportunity for a hearing on the matter. *See Duff v. U.S. Trustee (In re Cal. Fidelity, Inc.),* 198 B.R. 567, 573 (9th Cir. BAP 1996) (stating that procedural due process requires at a minimum that there be notice and a hearing before an individual is deprived of a significant property interest, and that pursuant to Rule 9014, "parties are entitled to reasonable notice and an opportunity for a hearing in contested matters"). Due process thus requires more than simply that the parties be aware of the litigation, *United States v. Castro,* 243 B.R. 380, 383 (D.Ariz.1999),

ing clause of Rule 60(b) only "to prevent a grave miscarriage of justice." *United States v. Beggerly,* 524 U.S. 38, 47, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998).

We need not decide, here, the form of the court's subject matter jurisdiction, but only that it had jurisdiction over the void judgment.

but also they have the opportunity to prepare adequately for an impending hearing. *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 14, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978).

 Mailing a timely notice by first class mail to a party's last known address is sufficient to satisfy due process. *De-Vore v. Marshack (In re DeVore),* 223 B.R. 193, 196 (9th Cir. BAP 1998). Under the "mailbox rule," "upon proof that mail is properly addressed, stamped and deposited in an appropriate receptacle, it is presumed to have been received by the addressee in the ordinary course of the mails." *Herndon v. De la Cruz (In re De la Cruz),* 176 B.R. 19, 22 (9th Cir. BAP 1994) (citing *Hagner v. United States,* 285 U.S. 427, 430, 52 S.Ct. 417, 76 L.Ed. 861 (1932)).

 Hasso mailed the motion to "1 Rolling View Lane" instead of the correct address of "3 Rolling View Lane." Therefore, Hasso was not entitled to the presumption of service, but rather had to prove that the Kempfs had actual notice and a reasonable opportunity to be heard. *See Cal. Fidelity,* 198 B.R. at 573 (finding no denial of due process if there is actual notice and opportunity to be heard); *De la Cruz,* 176 B.R. at 23–24 (actual notice of bankruptcy filing put creditor on inquiry notice of deadline for filing complaint).

When Mozsgai's motion was heard, Hasso did not produce any evidence of actual notice to the Kempfs. Mozsgai produced evidence that the Kempfs did not reside at the address to which Hasso's motion was sent. Therefore, the court's finding that the Kempfs did not receive due process was not erroneous.[10]

With his subsequent motion for reconsideration of the Mozsgai Vacatur Order, Hasso, for the first time, presented evidence of the post office guideline to deliver mail to known addressees, as well as declarations stating that the mailing had not been returned as undelivered. In addition, in a reply pleading, Hasso presented a new declaration by Mr. Kempf, dated September 30, 2001, in which he stated that the Kempfs had "received mail" from Hasso's attorney, in 1998, which "had not been properly addressed to us."

 In order to establish that the court abused its discretion in denying Hasso's motion for reconsideration on the basis of such newly discovered evidence, Hasso had to show that "(1) the evidence was discovered after trial, (2) the exercise of due diligence would not have resulted in the evidence being discovered at an earlier stage and (3) the newly discovered evidence is of such magnitude that production of it earlier would likely have changed the outcome of the case." *Defenders of Wildlife v. Bernal,* 204 F.3d 920, 928–29 (9th Cir.2000).

 Hasso's motion did not meet these requirements. The court expressly found that Mr. Kempf's statement that he received mail in 1998 did not sufficiently identify that mail as Hasso's motion nor prove that the motion was timely served. That finding was not clearly erroneous.[11]

---

**10.** The bankruptcy court stated that it was inferring, "from the evidence before me, all of the evidence, not just the evidence of the one with the burden [of proof], but the evidence of all who presented evidence, that the notice was not adequate." (Transcript, August 14, 2001, at 12:14–17.)

**11.** Hasso also maintains that the court applied the incorrect legal standard because it failed to view the evidence in the light most favorable to him as the nonmoving party. *See* Fed. R. Bankr.P. 7056/Fed. R. Civ. P. 56; *see also* Fed. R. Bankr.P. 9014 (incorporating summary judgment procedure in contested motion practice). He believes application of

The bankruptcy court also correctly found that the second Kempf declaration, the post office guideline and the declarations did not constitute "new evidence." Hasso had several months in which to locate the Kempfs and to obtain the necessary evidence. The bankruptcy court did not abuse its discretion in denying Hasso's motion for reconsideration based on a factual error or "new evidence." [12]

### C. Denial of the Continuance was not an Abuse of Discretion

Hasso argues that the court abused its discretion by refusing his motion for a continuance for discovery and further hearing on the issue of whether the Kempfs received actual notice.

■ A bankruptcy court has wide latitude in controlling discovery. *Mulvania*, 214 B.R. at 6. In reviewing a denial of a motion to continue, we consider four factors: diligence of the requesting party, usefulness of the continuance, inconvenience to the court and the other side, and prejudice from the denial. *United States v. Pope*, 841 F.2d 954, 956 (9th Cir.1988); *see also United States v. 2.61 Acres of Land*, 791 F.2d 666, 671 (9th Cir.1985).

■ We will not disturb a denial of continuance for purposes of discovery unless the party shows "actual and substan-

tial prejudice." *Martel v. County of Los Angeles*, 56 F.3d 993, 995 (9th Cir.1995)(en banc). For example, in *Mulvania*, the debtor appealed the court's allowance of a tax claim. In bankruptcy court, the debtor submitted an affidavit court stating that he had not received the required notice of the assessment of taxes. *Mulvania*, 214 B.R. at 7. Nevertheless, the bankruptcy court denied his request for further discovery. The BAP reversed and remanded, holding that the debtor raised a factual question as to whether the taxes were validly assessed, and therefore that it was an abuse of discretion for the bankruptcy court to deny the debtor an opportunity to conduct further discovery. *Id.*

■ Hasso did not indicate how additional time and investigation would yield the required evidence. He already had several months to discover the facts, but waited until the very end of the proceedings to produce a document which did not prove his point.[13] Denial of a continuance is appropriate where the complaining party does not commence discovery early enough in the proceedings. *See DeLorean v. Allard (In re DeLorean Motor Co. Litig.)*, 59 B.R. 329, 334–35 (E.D.Mich.1986).

Hasso cites *Svob v. Bryan (In re Bryan)*, 261 B.R. 240 (9th Cir. BAP 2001)

the summary judgment standard would result in reversal of the bankruptcy court's factual inference that the Kempfs did not receive Hasso's motion.

However, this was not a summary judgment proceeding. In a summary judgment motion, the facts are static and judgment is entered as a matter of law. *See generally* 10A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure: Civil 3d,* § 2711 et seq. (1998). Here, judgment resulted from the court's findings and conclusions concerning due process drawn from the evidence presented at the hearing on Mozsgai's motion. *See* Fed. R. Bankr.P. 9014, 7052(a).

**12.** This ruling was consistent with the court's resolution of Hasso's motion, in 1998, where the court agreed to vacate, as to Hasso, the Sale Orders because it found no evidence that Hasso had received notice of the sale motion.

**13.** As noted above, Hasso alleged that he was prevented from locating the Kempfs until the last minute. Even if he was provided with an incorrect address in the first instance, we do not see how Hasso was prejudiced by the court's ruling. He obtained a declaration from Mr. Kempf, but it lacked the necessary information to support his claim.

to support his argument that the bankruptcy court should have continued the matter for a more extensive evidentiary hearing. *Bryan* is not on point because it concerned a summary judgment motion in an adversary proceeding where the existence of a genuine issue of material fact warranted a trial. *Id.* at 248.

Hasso also cites *Nikwei v. Ross School of Aviation, Inc.,* 822 F.2d 939, 941 (10th Cir.1987), where there was a motion to set aside a default judgment for lack of due process, and an evidentiary hearing was held to ascertain whether service had been perfected. In our case, the bankruptcy court conducted an evidentiary hearing. There were no grounds for further discovery or a hearing regarding the Mozsgai motion. Therefore, the court did not abuse its discretion in denying Hasso's motion for a continuance.

### CONCLUSION

Mozsgai had standing to seek relief from the Hasso Vacatur Order which directly and pecuniarily affected Mozsgai's ownership interest in the Property. Moreover, Mozsgai's privies, who were interested parties in Hasso's motion, did not have the opportunity to oppose the motion. Therefore, the court's conclusion that the Hasso Vacatur Order was void for lack of due process was not erroneous. Lastly, the court did not abuse its discretion in denying Hasso's motions for reconsideration and for a continuance for discovery and further hearing.

The August 28, 2001 Mozsgai Vacatur Order and October 30, 2001 order denying Hasso's motion for reconsideration are therefore **AFFIRMED**.