FILED

MAR 22 2017

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   NC-15-1174-KuBS |
| THE ZUERCHER TRUST OF 1999, | Bk. No.   3:12-bk-32747 |
| Debtor. | |
| MONICA HUJAZI, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| E. LYNN SCHOENMANN, Chapter 7 Trustee; WIN WIN ALEXANDER UNION, LLC, | |
| Appellees. | |

Argued and Submitted on January 19, 2017
at San Francisco, California

Filed – March 22, 2017

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Hannah L. Blumenstiel, Bankruptcy Judge, Presiding

Appearances:     Bradley Kass of Kass & Kass Law Offices argued for appellant Monica Hujazi; Thomas F. Koegel of Crowell & Moring LLP argued for appellee E. Lynn Schoenmann, Chapter 7 Trustee; Elsa Horowitz of Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP argued for appellee Win Win Alexander Union, LLC.

_____

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

Before: KURTZ, BRAND and SPRAKER,[**] Bankruptcy Judges.

**INTRODUCTION**

On remand from a prior appeal of the bankruptcy court's order approving the sale of two apartment buildings, the bankruptcy court found (for the second time) that the purchaser – Win Win Alexander Union, LLC – was a good faith purchaser within the meaning of § 363(m).[1] Monica Hujazi, the former principal of the debtor, now appeals from the bankruptcy court's second good faith finding.

Because that finding was not clearly erroneous, We AFFIRM.

**FACTS**

Most of the relevant facts pertaining to the bankruptcy court's sale order are set forth in this Panel's prior decision, Zuercher Trust of 1999 v. Kravitz (Zuercher Trust of 1999), 2014 WL 7191348 (Mem. Dec.) (9th Cir. BAP Dec. 17, 2014). There is no need to reiterate most of those facts. Indeed, Hujazi's opening appeal brief adopted our prior factual recitation as her own.

To briefly recap, the bankruptcy court entered on June 10, 2013, an order authorizing Peter Kravitz as chapter 11 trustee to sell an apartment building on Union Avenue to Win Win based on

---

[**]Hon. Gary A. Spraker, Chief United States Bankruptcy Judge for the District of Alaska, sitting by designation.

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

2

its initial credit bid of $2.7 million.[2] The sale order further authorized Kravitz to sell a second apartment building on Alexandria Avenue to Vista Investment Group, LLC or its designee for $6.8 million and also confirmed and authorized Win Win as the backup purchaser of the Alexandria property based on its credit bid of $4.5 million "in the event that the sale of the Alexandria Property to Vista fails to close." Additionally, the sale order included a finding that both Win Win and Vista qualified as good faith purchasers for purposes of § 363(m). Ultimately, Kravitz consummated the sale of both properties to Win Win.

We issued our decision in the prior sale order appeal on December 17, 2014. In that decision, we held: (1) the bankruptcy court's § 363(m) good faith finding was not clearly erroneous based on the record available to the bankruptcy court at the time the sale order was entered; (2) the bankruptcy court's good faith finding under § 363(m) precluded us from considering any of appellant's other issues challenging the sale and seeking reversal of the sale order; (3) one lingering good faith issue existed, which arose from appellant's argument that certain post-sale-order events evidenced the bad faith of Kravitz, Win Win and Vista; and (4) consistent with our precedent, the lingering good faith issue only could be properly addressed on remand to the bankruptcy court.

Roughly two months after our remand, on February 19, 2015, the bankruptcy court held a status conference to discuss the

---

[2]In the current appeal, appellee chapter 7 trustee E. Lynn Schoenmann has appeared as Kravitz's successor in interest.

3

Panel's remand. None of the parties have provided a transcript of the status conference, so we don't know specifically what was said at the status conference. In any event, the court entered an order the day after the status conference requiring the Zuercher Trust or Hujazi, within thirty days, to file a motion for relief from or reconsideration of the sale order to address the good faith issue this Panel had remanded for consideration.[3]

Hujazi timely filed her motion for reconsideration or relief. Hujazi asserted that Kravitz unilaterally decided not to sell the Alexandria property to Vista for $6.8 million and instead unilaterally and without court approval sold the Alexandria property to Win Win based on its backup credit bid of $4.5 million, thereby causing a loss to the estate of $2.3 million. Hujazi maintained that the Alexandria sale to Win Win contravened the court's sale order because the sale order permitted the trustee to sell the Alexandria property to Win Win only if Vista refused to close. According to Hujazi, because Kravitz backed out of the sale to Vista (as opposed to Vista backing out), Kravitz was required to obtain a new or revised sale order. Hujazi complained that it made no sense that Kravitz

[3]The bankruptcy court interpreted our December 2014 decision as recognizing a lingering good faith issue only with respect to the sale of the Alexandria property, so it stated in its February 20, 2015 order that any motion asking for relief from or reconsideration of the bankruptcy court's prior good faith ruling should "address the [m]ovant's concerns as to the sale of the Alexandria Property only." Hujazi's appeal brief does not contain any argument challenging this ruling of the bankruptcy court, so we decline to address it. See Christian Legal Soc'y Chapter of Univ. of Cal. v. Wu, 626 F.3d 483, 487–88 (9th Cir. 2010); Brownfield v. City of Yakima, 612 F.3d 1140, 1149 n.4 (9th Cir. 2010).

4

could not deliver clear title to Vista but could turn around and deliver clear title to Win Win. Hujazi contended that fraud, collusion and unfair advantage among Kravitz, Win Win and Vista were demonstrated by the fact that Win Win turned around and resold the Alexandria property to Vista for $6.8 million – the same price Vista had agreed to purchase the property from Kravitz for.

To support her arguments, Hujazi relied on declarations that Kravitz and Win Win had filed with this Panel in the sale order appeal. However, Hujazi did not present any new evidence. Moreover, the record suggests that Hujazi never requested any discovery regarding the post-sale-order events, either before or after this Panel's remand. Nor did she ever file a motion seeking an extension of time in order to conduct discovery.

Kravitz and Win Win both opposed the motion and filed declarations offering explanations why the Kravitz-Vista sale fell through, why no further court approval was necessary for Kravitz to consummate the backup sale to Win Win and why Win Win could and did resell the property to Vista for $6.8 million.

The court held a hearing on Hujazi's motion on May 7, 2015. After considerable discussion with the parties regarding what could be inferred from the declarations submitted, the bankruptcy court reaffirmed its prior good faith finding in light of the evidence submitted regarding post-sale-order events. On that evidence, the bankruptcy court found there was no fraud, collusion or unfair advantage. The court further found that the Kravitz-Vista sale could not close because a number of unanticipated issues arose, and neither party was willing or able

5

to bear the additional risk and expense associated with the unanticipated issues. According to the court, in compliance with the terms of the sale order, Kravitz then sold to Win Win based on its backup bid because Win Win was willing to bear, and did bear, the risks and costs of the unforeseen contingencies. The court rejected Hujazi's arguments that Kravitz unilaterally was unwilling to close the Vista sale and that the sale order did not authorize Kravitz to close the Alexandria sale with Win Win as the backup bidder unless Vista unilaterally and voluntarily refused to close. As the court put it, Hujazi's reading of this aspect of the sale order was "so stilted and impractical and inconsistent with decades of [bankruptcy] practice, as to be mind-boggling, quite frankly." Hr'g Tr. (May 7, 2015) at 33:12-14.

The bankruptcy court additionally found that the net recovery to the bankruptcy estate resulting from either the Vista sale or the Win Win sale was exactly the same. In fact, Hujazi conceded this point during argument. Finally, the court found that there was nothing nefarious about Win Win's resale of the Alexandria Property to Vista for $6.8 million. Rather, Win Win wanted to resell the property as soon as possible so that it could retire the debt it owed to East West Bank, and Win Win was able to resell the property to Vista because Win Win could and did assume a significant amount of additional expense and risk to resolve the unforeseen contingencies, which had prevented the Kravitz-Vista sale from closing.

The bankruptcy court entered its order denying Hujazi's motion on May 8, 2015, and Hujazi timely appealed.

6

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(N). Subject to the standing analysis set forth below, we have jurisdiction under 28 U.S.C. § 158.

**ISSUES**

1. Does Hujazi have standing to appeal?

2. Did the bankruptcy court clearly err when it reaffirmed its original good faith finding pursuant to § 363(m)?

**STANDARDS OF REVIEW**

We review appellate standing issues de novo. Menk v. LaPaglia (In re Menk), 241 B.R. 896, 903 (9th Cir. BAP 1999).

The bankruptcy court's good faith determination resolved a question of fact that we review under the clearly erroneous standard. Adeli v. Barclay (In re Berkeley Delaware Court, LLC), 834 F.3d 1036, 1041 (9th Cir. 2016); Thomas v. Namba (In re Thomas), 287 B.R. 782, 785 (9th Cir. BAP 2002). A finding of fact is not clearly erroneous unless it is illogical, implausible, or without support in the record. Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010).

The bankruptcy court's reaffirmation of its good faith finding relied in part on its interpretation of its prior sale order. "We accord substantial deference to the bankruptcy court's interpretation of its own orders and will not overturn that interpretation unless we are convinced it amounts to an abuse of discretion." Rosales v. Wallace (In re Wallace), 490 B.R. 898, 906 (9th Cir. BAP 2013).

We also review for an abuse of discretion Hujazi's argument that the bankruptcy court should have postponed the hearing on

7

the good faith issue in order to give Hujazi additional time to conduct discovery. See Orr v. Bank of Am., 285 F.3d 764, 783 (9th Cir. 2002); Hasso v. Mozsgai (In re La Sierra Fin. Servs., Inc.), 290 B.R. 718, 726 (9th Cir. BAP 2002).

The bankruptcy court abuses its discretion only if it applied an incorrect legal rule or its findings of fact were illogical, implausible or without support in the record. United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

**DISCUSSION**

**1.    Appellate Standing Issue**

Appellees argue that Hujazi lacks standing to appeal. Only a "person aggrieved" has standing to appeal, which means that the appellant must be "directly and adversely affected pecuniarily" by the order on appeal. Fondiller v. Robertson (In re Fondiller), 707 F.2d 441, 442 (9th Cir. 1983); see also Cheng v. K & S Diversified Invs., Inc. (In re Cheng), 308 B.R. 448, 455 (9th Cir. BAP 2004), aff'd, 160 Fed.Appx. 644 (9th Cir. 2005).

According to appellees, Hujazi is not directly and adversely affected pecuniarily because neither the Zuercher Trust bankruptcy nor Hujazi's personal bankruptcy have any realistic chance of concluding with surplus estates. Absent surplus estates, debtors typically lack standing to appeal orders affecting the size of the bankruptcy estate. In re Fondiller, 707 F.2d at 442. Hujazi posits that the ultimate outcome of the bankruptcy cases depends in part on the outcome of the myriad appeals she has taken from the bankruptcy court's orders.

We need not parse the parties' complex appellate standing

8

question, which arguably would require us to predict the likely end results of various litigation and two bankruptcy cases. Instead, we rely on other facts to conclude that Hujazi has standing to appeal. Namely, because Hujazi is personally liable on the Alexandria and Union loans as a codebtor, she has an ongoing personal stake in the sale of the properties which secured those loans and how those sales affected her personal liability. Cf. Zuercher Trust of 1999 v. Schoenmann (In re Zuercher Trust of 1999), 2016 WL 721485, at *7 (Mem. Dec.) (9th Cir. BAP Feb. 22, 2016) (holding that Hujazi's codebtor status gave her standing to appeal a different sale order).

In this Panel's 2014 decision in the sale order appeal, we noted that Hujazi was a codebtor on the Alexandria and Union loans. See 2014 WL 7191348, at *1. In addition, Hujazi made this same point during the post-remand hearing on her motion for relief or reconsideration. The appellees never challenged Hujazi's assertion of codebtor status.

We acknowledge that Hujazi might receive a discharge in her personal bankruptcy case, which in theory would end her personal liability for the Union and Alexandria loans. Even so, whether she ultimately will receive that discharge is debatable. The deadline for objecting to her discharge has been continued from time to time and currently is not set to expire until April 21, 2017. Furthermore, given Hujazi's pending appeal concerning the order for relief entered in her personal bankruptcy case and given her aggressive opposition to the chapter 7 trustee's efforts to administer her personal bankruptcy estate, it is not hard to imagine that she might never receive a discharge.

9

In short, we conclude for appellate standing purposes that Hujazi is directly and adversely affected pecuniarily by the bankruptcy court's denial of her post-remand motion for relief or reconsideration.

**2.    Reaffirmation of the Good Faith Finding**

We should not and will not revisit the legal question of what generally constitutes good faith under § 363(m).  This Panel's prior decision in the sale order appeal, 2014 WL 7191348, ably addressed that issue and its legal analysis is law of the case.  See generally Am. Express Travel Related Servs. Co. v. Fraschilla (In re Fraschilla), 235 B.R. 449, 454 (9th Cir. BAP 1999) (explaining doctrine and its exceptions), aff'd, 242 F.3d 381 (9th Cir. 2000) (table).

As explained in our prior decision, we remanded for consideration of the factual issue of whether post-sale-order events evidenced any fraud, collusion or grossly unfair advantage over other bidders that would justify reconsideration of the bankruptcy court's June 2013 good faith finding.

In their respective briefs and declarations filed in opposition to Hujazi's post-remand motion, Kravitz and Win Win offered detailed explanations: (1) why Kravitz's sale to Vista fell through; (2) why no further court approval was necessary for Kravitz to consummate the backup sale to Win Win; and (3) why Win Win could and did resell the property to Vista for $6.8 million.

Kravitz explained in his declaration that he attempted to close the sale to Vista for roughly six weeks, but that a number of unexpected issues arose when he attempted to procure title insurance for the sale.  For instance, he could not find any

10

title insurer who was willing to issue a policy before the appeal period ended or while the Zuercher Trust's appeal from the sale order was pending. Also, notwithstanding the sale free and clear of liens and other interests language in the sale order, the title insurers were unwilling to issue a policy unless certain lien notices issued by the City of Los Angeles were released. In addition, Kravitz learned during his closing attempts that a $225,000 withholding tax was going to be incurred as a result of the cash sale to Vista and would need to be paid out of escrow. Vista maintained that these and other sale costs were the responsibility of the seller, but the estate had inadequate funds to satisfy them. According to Kravitz, as a result of his inability to resolve these unexpected issues, Vista declined to close.

As explained by both Kravitz and Win Win, Win Win was willing and able to close notwithstanding these additional issues. Win Win agreed to move forward with the sale even though no title insurance policy could be obtained. Also, because the sale to Win Win was based on a credit bid and was not a cash sale, the $225,000 withholding tax would not accrue.

Win Win also explained that it was motivated to close its purchase from Kravitz and its sale to Vista because it needed to retire the debt it owed to East West Bank. In fact, as Win Win maintained, it would have been significantly better off if the Kravitz-Vista sale had closed. In order for Win Win to close its purchase from Kravitz and its sale to Vista, it had to assume a number of additional risks and costs that it would not have incurred if the Kravitz-Vista sale had closed.

11

In contrast, Kravitz's $4.3 million sale to the backup bidder Win Win (in lieu of closing its $6.8 million sale to Vista) did not diminish the estate's benefits from the sale or increase its burdens. The estate still received all of the benefits it bargained for before obtaining court approval. As Kravitz stated:

> Fortunately for the estate, by selling Alexandria to Win-Win as the back-up bidder, I was able to preserve the tremendous benefit to the estate that I had negotiated under the original bid procedure terms. Specifically, Win-Win paid both $50,000.00 fees to the estate for a total of $100,000.00 cash; Win-Win agreed to cap its post-petition administrative claims (estimated to be $1.2 million as of the sale date) to no more than $50,000.00 and subject to my right to object to such claims; Win-Win removed all its secured liens from the Alexandria and Union properties resulting in the removal of $15 million in secured claims against the estate; and Win-Win's claims against the estate were reduced to unsecured claims of approximately $5.3 million (down from the $15 million plus in secured claims).

Kravitz Decl. (April 17, 2015) at ¶ 6.

As for the $2.5 million difference in sale price between the aborted Vista sale and the completed Win Win sale, Kravitz pointed out that all of the gross sale proceeds lost would have been paid to Win Win on account of its secured claim and thus the estate did not lose any net sale proceeds.

The findings of the bankruptcy court reflect that it credited the declaration testimony the parties presented and that it found Kravitz's and Win Win's explanations of the post-sale-order events credible. Also, the court inferred from those explanations that there was no fraud, collusion or grossly unfair advantage taken by or between Kravitz, Win Win or Vista.

Hujazi presented no controverting evidence. In essence, she

asked the court to reject the appellees' explanations and to infer bad faith from the bare outline of the post-sale-order events. Assuming without deciding that the bankruptcy court could have inferred bad faith as Hujazi urged, the court's choice not to do so was not clearly erroneous. Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."). Put another way, we cannot say that the bankruptcy court's renewed finding of good faith with respect to the Alexandria sale was illogical, implausible or without support in the record.

Hujazi also argued that bad faith was apparent because Kravitz's backup sale to Win Win contravened the sale order. But the bankruptcy court rejected this argument, reasoning that Hujazi's interpretation of the sale order was overly restrictive and impractical. According to the bankruptcy court, Kravitz's sale to the backup bidder was contemplated by and in full compliance with the sale order.

The sale order in relevant part provided as follows:

Win Win is confirmed as the back-up purchaser of the Alexandria Property in the event that the sale of the Alexandria Property to Vista fails to close. In such event, Win Win or its designee is confirmed as the purchaser, and the Trustee is authorized to sell and transfer to Win Win the Alexandria Property pursuant to the terms, including the original purchase price of $4,500,000, as set forth in the Motion. If Vista fails to close its purchase of the Alexandria Property, such back-up sale can be consummated without further order of this Court, but the parties may lodge an amended order if and/or as necessary.

Sale Order (June 10, 2013) at ¶ 5.

We give significant deference to the bankruptcy court's

13

interpretation of its own orders. In re Wallace, 490 B.R. at 906 (citing Marciano v. Fahs (In re Marciano), 459 B.R. 27, 35 (9th Cir. BAP 2011)). Hujazi has not offered any reasoned argument why it was an abuse of discretion for the bankruptcy court to interpret the sale order in the manner it did, nor are we aware of any such argument. In sum, we hold that the bankruptcy court did not abuse its discretion when it ruled that the backup sale to Win Win was in compliance with the sale order.

**3.  Denial of Additional Time for Discovery**

Hujazi also argues on appeal that the bankruptcy court should have extended the reconsideration motion proceedings to permit additional time for discovery. Hujazi never filed a motion requesting an extension of time; however, the bankruptcy court apparently denied Hujazi's oral request for more time at the February 2015 post-remand status conference.

In order to determine whether bankruptcy courts have abused their discretion in denying requests for more time to conduct discovery, we typically look at all relevant facts and usually focus on the following four considerations: (1) whether lack of diligence necessitated the request; (2) whether the continuance, if granted, would have satisfied the stated need for the continuance; (3) the impact of the continuance on the court and the adverse parties and (4) whether the requesting party was prejudiced by the denial. In re La Sierra Fin. Serv., Inc., 290 B.R. at 726; see also United States v. Pope, 841 F.2d 954, 956 (9th Cir. 1988); United States v. 2.61 Acres of Land, 791 F.2d 666, 671 (9th Cir. 1985).

However, we need not look at those factors in order to

14

uphold the bankruptcy court's denial here. We cannot and will not disturb a denial of a continuance sought for purposes of discovery unless the appellant has made the "'clearest showing' of actual and substantial prejudice." Martel v. County of Los Angeles, 56 F.3d 993, 995 (9th Cir. 1995) (en banc).

Under Martel, Hujazi's speculation that, if she had been given additional time to take some unspecified discovery, she might have uncovered some evidence tending to support her unsubstantiated allegations of bad faith is patently insufficient to meet her heavy burden of proof. Id. at 996-97. Moreover, Hujazi's lack of diligence by not requesting any discovery on the good faith issue either before or after our remand and her failure to file a written motion requesting a continuance for discovery purposes further bolster our conviction that Hujazi has not made the requisite showing of prejudice.[4]

---

[4]Nearly two years elapsed between the entry of the bankruptcy court's June 2013 sale order and the May 2015 hearing on Hujazi's motion seeking reconsideration of the good faith issue. During that entire time, Hujazi knew or should have known that the bankruptcy court's § 363(m) good faith finding was a substantial and likely fatal impediment to her obtaining appellate review of the sale order. Hujazi also has known, since at least August 2013, that the Kravitz-Vista sale never closed and that the backup sale to Win Win took place. And Hujazi further has known, since at least March 2014, that an affiliate of Vista's – Alex Court LLC – purchased the Alexandria property from Win Win for $6.8 million. Yet there is nothing in the record indicating that Hujazi ever made any effort to propound discovery to flesh out her theory why the post-sale-order events evidenced bad faith. There are a number of procedures that Hujazi potentially could have employed at various times between March 2014 and May 2015 to collect evidence regarding the good faith issue. See, e.g., Rules 2004, 7027, 9014(c). We express no opinion as to which of these discovery devices Hujazi appropriately could have utilized. It suffices for us to say
(continued...)

15

Consequently, there is no ground to reverse the bankruptcy court's denial of Hujazi's oral request for additional time to conduct discovery.

**CONCLUSION**

For the reasons set forth above, we conclude that the bankruptcy court's post-remand good faith finding was not clearly erroneous, and we AFFIRM its order denying Hujazi's post-remand motion for relief or reconsideration.

---

[4](...continued) that Hujazi attempted none of them.

16